UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

| | |
|---|---|
| **SHANE SWIFT, on Behalf of Himself and All Others Similarly Situated,** | **Case No. 1:10-cv-90-MMP** |
| **Plaintiff,** | |
| **vs.** | |
| **BANCORPSOUTH BANK,** | |
| **Defendant.** | |

<u>**PLAINTIFFS' PRETRIAL ISSUES MEMORANDUM**</u>

Plaintiff and the certified class ("Plaintiffs") submit this memorandum addressing pretrial issues in accord with this Court's Order for Pre-Trial Conference and Setting Trial.  (N.D. Fla. DE # 49).

**I.    Status of The Case**

In June 2009, the Judicial Panel on Multidistrict Litigation ("JPML") created MDL No. 2036, and appointed United States District Judge James Lawrence King of the Southern District of Florida to preside over pretrial proceedings in a series of cases against numerous banks challenging the practice of assessing overdraft fees against their consumer account holders using a high-to-low re-sequencing scheme for debit card and ATM transactions.  *See In re Checking Account Overdraft Litig.*, 626 F. Supp. 2d 1333, 1335 (J.P.M.L. 2009).  Cases against more than 40 banks were eventually transferred to MDL No. 2036 for coordinated pretrial proceedings before Judge King.

On May 18, 2010, Plaintiff Shane Swift filed this case against Defendant

BancorpSouth Bank.  In October 2010, the JPML transferred this case to the Southern District of Florida for inclusion in MDL No. 2036.  (S.D. Fla. DE # 847, 848).  Extensive pretrial proceedings were conducted before Judge King following transfer to MDL No. 2036.

On December 6, 2010, Plaintiff filed a Second Amended Complaint, asserting claims for breach of contract/breach of the implied covenant of good faith and fair dealing (Count I), unconscionability (Count II), Conversion (Count III), Unjust Enrichment (Count IV), and for violation of Arkansas' Deceptive Trade Practice Act (Count V).  (S.D. Fla. DE # 994).  BancorpSouth Bank moved to dismiss the Second Amended Complaint.  (S.D. Fla. DE # 1068).  Following briefing and oral argument, Judge King denied BancorpSouth Bank's motion to dismiss the Second Amended Complaint.  (S.D. Fla. DE # 1305).

On April 11, 2011, BancorpSouth Bank filed its Answer and Affirmative Defenses, denying liability and asserting numerous defenses.  (S.D. Fla. DE # 1335).  Plaintiff moved to strike a number of BancorpSouth Bank's defenses as legally insufficient.  (S.D. Fla. DE # 1390).  Prior to a ruling on that motion, the Court approved the parties' stipulation authorizing BancorpSouth Bank to file amended affirmative defenses.  (S.D. Fla. DE # 1613).  On July 6, 2011, BancorpSouth Bank filed its Amended Answer and Affirmative Defenses.  (S.D. Fla. DE # 1693).  As a result, the operative pleadings in this case are Plaintiffs' Second Amended Complaint and

BancorpSouth Bank's Amended Answer and Affirmative Defenses.[1]  (S.D. Fla. DE # 994, 1693).

Discovery commenced in May 2011.  During the course of discovery, Plaintiffs reviewed over 100,000 pages of documents produced by BancorpSouth Bank, and Plaintiffs' data expert analyzed voluminous electronic data produced by BancorpSouth Bank pertaining to its consumer account holders' banking transactions during the class period.  Plaintiffs deposed six BancorpSouth Bank employees, including Derek Caswell, Patty Farris, Jeff Jaggers (as corporate representative and individually), Michael Lindsey (as corporate representative and individually), and Lee McAllister.  BancorpSouth Bank propounded written discovery, and deposed Plaintiff Shane Swift, and his wife, Trina Swift.

Both sides have disclosed experts on various topics.  Plaintiffs designated Arthur Olsen, an expert in database analysis, data extraction, and data analysis, who first provided a declaration in support of class certification and later performed a class-wide calculation of damages using the voluminous electronic banking data produced by BancorpSouth Bank; Bruce McFarlane, a damages methodology expert, who opines about alternative posting orders as a reliable measure of class members' damages; and Steven Fried, a banking expert, who opines about BancorpSouth Bank's debit re-sequencing practices and the motivations of banks such as BancorpSouth Bank in adopting debit re-sequencing like the one at issue in this lawsuit.

---

[1] On October 2, 2013, the claim for conversion (Count III) was dismissed pursuant to a Stipulation and Order.  (S.D. Fla. DE # 3667, 3668).

BancorpSouth Bank designated Steven Visser, an expert in the field of data management and analysis, who opined about the methodologies employed by Mr. Olsen; Michael Barone, an expert in marketing – specifically consumer behavior and consumer psychology – who opined about purported consumer benefits from sequencing and overdraft payment policies like the ones used by BancorpSouth Bank; and Paul A. Carrubba, an attorney specializing in banking law and legal and operational issues, who opined about the purported reasonableness of BancorpSouth Bank's processes and procedures relating to the posting sequence of transactions to deposit accounts, account disclosures, and information.  All experts were deposed.

On December 20 2011, Plaintiffs filed their motion for class certification.  (S.D. Fla. DE # 2271).  Following extensive briefing and oral argument, the Court entered an Opinion and Order Granting Class Certification on May 4, 2012, a copy of which is attached as *Exhibit A*.  (S.D. Fla. DE # 2673).  In the class certification order, the Court certified the following class:

> All BancorpSouth Bank customers in the United States who had one or more accounts and who, from the applicable statute of limitations through August 13, 2010 (the "Class Period"), incurred an overdraft fee as a result of BancorpSouth's practice of sequencing debit card transactions from highest to lowest.

*Exhibit A* at p. 22.  Additionally, at Plaintiffs' request, the Court certified the following five subclasses:

> One good faith and fair dealing subclass (encompassing Alabama, Arkansas, Florida, Louisiana, Mississippi, and Tennessee); one unjust enrichment subclass (encompassing Arkansas and Mississippi); two unconscionability subclasses (one encompassing Alabama, Arkansas, Florida, Louisiana, Tennessee, and Texas; and the other encompassing Mississippi and Missouri); and one subclasses [sic] for Plaintiff's

Arkansas Deceptive Trade Practices Act claims.

*Exhibit A* at p. 23.

BancorpSouth Bank then filed a petition with the United States Court of Appeals for the Eleventh Circuit, pursuant to Fed. R. Civ. P. 23(f), seeking permission to appeal the Opinion and Order Granting Class Certification.  *See* 11th Cir. Case No. 12-90024-E. Following briefing, the Eleventh Circuit denied BancorpSouth Bank's petition for permission to appeal.  (S.D. Fla. DE # 3294).   On May 3, 2013, BancorpSouth Bank moved to decertify the class.  (S.D. Fla. DE # 3455).  Following briefing, the District Court denied BancorpSouth Bank's motion to decertify the class.  (S.D. Fla. DE # 3540). BancorpSouth Bank then filed a second petition pursuant to Fed. R. Civ. P. 23(f), seeking permission to appeal the Order Denying Motion to Decertify, which the Eleventh Circuit denied.[2]  *See* 11th Cir. Case No. 13-90019-E.

In February 2013, the District Court approved the implementation and completion of the class notice plan to 185,280 members of the certified class.  (S.D. Fla. DE # 3242, 3338, 3342).  Two hundred and thirty-eight (238) class members timely exercised their right to opt out of the certified class.  (S.D. Fla. DE # 3589).

The District Court's Revised Scheduling Order directed the parties to file *all pretrial motions*, including motions for summary judgment, *Daubert* motions, and motions in limine.  (S.D. Fla. DE # 2834).   The filing deadlines were extended by

---

[2] During one of the Fed. R. Civ. P. 23(f) proceedings, the Eleventh Circuit raised a technical issue concerning the diversity jurisdiction allegations, which Plaintiffs corrected by way of an unopposed motion to amend the Second Amended Complaint by Interlineation.  (S.D. Fla. DE # 2820, 2826).

subsequent Order.  (S.D. Fla. DE # 2891).  The following pretrial motions were filed and decided by the District Court following briefing and, in some instances, oral argument:

- Plaintiffs moved for summary judgment as to certain of BancorpSouth Bank's affirmative defenses, arguing that those defenses were not available as a matter of law, either because they were inapplicable to the pending claims for relief or because there was no evidence to support the defenses.  (S.D. Fla. DE # 2997, 3035, 3116).  The District Court granted in part and denied in part Plaintiffs' motion for summary judgment as to certain of BancorpSouth Bank's affirmative defenses.  (S.D. Fla. DE # 3655, 3682).  A copy of the summary judgment order is attached as *Exhibit B*.  Prior to entry of the Order on Plaintiffs' summary judgment motion, the parties stipulated to the dismissal with prejudice of BancorpSouth Bank's res judicata and/or judicial estoppel and statute of repose defenses, and, consistent with the class certification order, to the applicable time frames for the relief Plaintiffs are seeking at trial pursuant to the various states' statutes of limitations governing the claims for relief (S.D. Fla. DE # 3667, 3668).  Thereafter, the Court granted summary judgment as to the affirmative defenses of laches, accord and satisfaction, ratification and acceptance, release, and course of dealing limited to Plaintiffs' breach of contract/implied covenant of good faith and fair dealing claim.  *Exhibit B* at pp. 5-7, 10.  The Court denied summary judgment as to the affirmative defenses of voluntary payment and course

of dealing limited to the claims for unjust enrichment, unconscionability, and violation of the Arkansas Deceptive Trade Practice Act. *Exhibit B* at pp. 8-10;

- BancorpSouth Bank moved for summary judgment against all of Plaintiffs' claims for relief, arguing that:

  - the claim for breach of contract/implied covenant of good faith and fair dealing fails because the deposit agreement and related disclosures expressly authorized the high to low re-sequencing of debit card transactions; Arkansas law does not recognize the implied covenant claim; and that even if Arkansas recognized the claim, BancorpSouth Bank did not breach the covenant because deposit agreement and related disclosures permitted the re-sequencing;

  - no affirmative claim for unconscionability exists under Arkansas law and, even if it did, there is no evidence of procedural and substantive unconscionability to support the claim;

  - no facts support the conversion claim, a claim that Plaintiffs did not seek to certify for class purposes, and which the parties dismissed by stipulation (S.D. Fla. DE # 3667, 3668);

  - Arkansas law does not recognize a claim for unjust enrichment by or against parties to a written contract;

  - as to the Arkansas Deceptive Trade Practice Act, BancorpSouth

Bank's conduct fell within the safe harbor provision for conduct which complies with any rule, order, or statute administered by the Federal Trade Commission or to actions or transactions permitted under laws administered by a regulatory body or officer acting under statutory authority of Arkansas or the United States; and its conduct otherwise was not deceptive or misleading because the deposit agreement and disclosures informed Plaintiffs of the re-sequencing policy and there was no evidence of injury arising from BancorpSouth Bank's posting policies;

o   BancorpSouth Bank's ratification affirmative defense bars all claims because Plaintiffs incurred overdraft fees after learning of BancorpSouth Bank's posting order;[3]

o   BancorpSouth Bank's waiver affirmative defense bars Plaintiffs' claims because they continued to accept the benefits of BancorpSouth Bank's overdraft protection service; and

o   all of the class claims would fail because Plaintiff's individual claims fail.

(S.D. Fla. DE # 2999).  Following extensive briefing and oral argument, the District Court denied BancorpSouth Bank's motion for summary judgment in its entirety.  *Exhibit B* at pp. 10-25;

---

[3] As discussed above, summary judgment was granted in Plaintiffs' favor on this defense. *Exhibit B* at pp. 7-8.

- Plaintiffs moved in limine to preclude BancorpSouth Bank from offering evidence regarding:

  o Plaintiff's control over other bank accounts or sources of payments when his account was overdrawn;

  o Plaintiff's purpose and use of transactions on which overdraft fees were assessed, to buttress the bank's argument that high to low posting benefits customers by giving priority to more important items;

  o BancorpSouth Bank purportedly acted in compliance with Office of the Comptroller of Currency ("OCC") Interpretive Letters because no such letters authorized debit card transactions posting in high to low order to increase fees, and that BancorpSouth Bank should not be permitted to rely on the "Q and A" section of the OCC's website because such information does not have the force of law;

  o BancorpSouth Bank's expert's, Paul Carrubba, opinion that BancorpSouth Bank's posting practices and account disclosures about those practices are common in the banking industry and used by competitors; and

  o BancorpSouth Bank's expert's, Michael Barone, opinion that high to low posting of debit card transactions in general might be objectively reasonable to some consumers.

(S.D. Fla. DE #2996).  The Court granted Plaintiffs' motion in limine in its entirety, finding all of the above described evidence irrelevant to the claims, with the qualifier that, consistent with the Court's *Daubert* order, discussed *infra* (S.D. Fla. DE # 3229), that any issues related to expert testimony, as well as any other evidentiary issues, may be further considered at the final pre-trial conference.  (S.D. Fla. DE # 3258);

- Plaintiffs also moved to strike BancorpSouth Bank's expert witnesses, Paul Carrubba and Michael Barone, arguing that their opinions did not satisfy the *Daubert* standard  (S.D. Fla. DE # 3014).  Plaintiffs argued that Mr. Carrubba was offering a veiled legal opinion, that his opinions lacked foundational support, and that his opinion that it is commercially reasonable to post transactions high-to-low are irrelevant and unsubstantiated.  Plaintiffs argued that Mr. Barone lacked support for his opinion that BancorpSouth Bank's posting order benefited consumers as he relied on generic marketing studies and conceded that higher cost transactions are typically not made using debit cards, and that his opinions were irrelevant to the central issue in the case.  Following extensive briefing, the District Court denied Plaintiffs' motion to strike BancorpSouth Bank's expert witnesses, concluding that there was "no cause to exclude their testimony at this time" or their reports, leaving the parties to object to the testimony and reports at trial (S.D. Fla. DE # 3229); and

- BancorpSouth Bank moved to strike two of Plaintiffs' expert witnesses, Arthur Olsen and Bruce McFarlane.   (S.D. Fla. DE # 3118). BancorpSouth Bank argued that Mr. Olsen was not a damages expert opining about a proper posting order or the appropriate amount of damages, a banking expert, or consumer behavior expert.   Mr. Olsen's opinions were labeled unreliable and claimed to lack "fit."   The challenge to Mr. McFarlane alleged that he did not do an analysis independent of what Mr. Olsen did, and that he was just approving Mr. Olsen's methods. BancorpSouth Bank claimed that both experts assumed liability such that they could not be used to establish liability.   Following extensive briefing, the District Court denied BancorpSouth Bank's motion to strike Plaintiffs' expert witnesses, also concluding that there was "no cause to exclude their testimony at this time" or their report, leaving the parties to object to the testimony and reports at trial.  (S.D. Fla. DE # 3229).  As to Mr. Olsen, the Court noted its previous denial of other banks' challenges to his expertise and opinions, including BancorpSouth Bank's challenge to Mr. Olsen at the class certification stage, indicating that the Court saw no reason to change its position on Mr. Olsen.  *Id.*

Upon the conclusion of three years of pretrial proceedings, including substantial fact and expert discovery, comprehensive pretrial motion practice and the District Court's determination of the pretrial motions, Judge King entered a Suggestion of Remand (S.D. Fla. DE # 3683, 3707).  Thereafter, the JPML remanded the case to this Court.  (N.D. Fla.

DE # 25, 26).  The Clerk of the Southern District of Florida transmitted relevant docket sheets and designated docket entries to the Clerk of this Court.  (N.D. Fla. DE # 30).

Following remand to this Court, BancorpSouth Bank moved to transfer venue pursuant to 28 U.S.C. § 1404(a).  (N.D. Fla. DE # 29, 33).  On June 4, 2014, this Court entered an Order Denying Defendant's Motion to Transfer Venue.  (N.D. Fla. DE # 48).

On June 5, 2014, this Court entered its Order for Pre-Trial Conference and Setting Trial.  (N.D. Fla. DE # 49).  Based on the pretrial proceedings conducted prior to remand, including the filing and disposition of all pretrial motions pursuant to the District Court's Revised Scheduling Order (S.D. Fla. DE # 2834), this case is now ready for a final pretrial conference and for the scheduling of trial.  Pursuant to the jury demand in Plaintiffs' Second Amended Complaint, the case will be tried to a jury.

## II.   Issues Requiring Determination Prior to Trial

The Court directed the parties to be guided by Fed. R. Civ. P. 16(c)(2) in addressing issues requiring determination prior to trial.  Accordingly, Plaintiffs discuss issues based on the relevant Rule 16(c)(2) factors.

### A.   Formulating and simplifying the issues, and eliminating frivolous claims or defenses.

The issues to be tried have been crystallized through the extensive motion practice before the District Court prior to remand.  Plaintiffs' claims are meritorious and have survived summary judgment.  While Plaintiffs disagree with BancorpSouth Bank's defenses, at this stage they do not foresee a means to eliminate any of the remaining defenses short of a trial on the merits.

**B.      Amending the pleadings if necessary or desirable.**

Further amendments to the pleadings are not appropriate at this stage of the proceedings.

**C.      Obtaining admissions and stipulations about facts and documents to avoid unnecessary proof, and ruling in advance on the admissibility of evidence.**

As indicated above, the District Court has already ruled on a number of evidentiary issues.  (S.D. Fla. DE # 3229, 3258).   Plaintiffs will comply with the requirements in the Order for Pre-Trial Conference and Setting Trial to work with BancorpSouth Bank to include concise statements of admitted and disputed facts, and agreed and disputed legal issues, in the pre-trial stipulation.   Plaintiffs will be prepared to discuss the disputed issues during the September 4, 2014 pre-trial conference.

**D.      Avoiding unnecessary proof and cumulative evidence, and limiting the use of testimony under Federal Rule of Evidence 702.**

As indicated above, the parties' *Daubert* motions were denied by the Court.  (S.D. Fla. DE # 3229).

**E.      Determining the appropriateness and timing of summary adjudication under Rule 56.**

As indicated above, the District Court has already ruled on summary judgment motions.  (S.D. Fla. DE # 3655, 3682).

**F.      Controlling and scheduling discovery, including orders affecting disclosures and discovery under Rule 26 and Rules 29 through 37.**

Fact discovery is closed, and expert disclosures and discovery is also closed.

**G.      Identifying witnesses and documents, scheduling the filing and exchange of any pretrial briefs, and setting dates for further conferences and for trial.**

The parties previously exchanged witness lists.  Plaintiffs propose that trial exhibit lists be exchanged 30 days prior to the August 28 deadline for the filing of the pretrial stipulation and, following such exchange, that the parties confer to determine which exhibits can be admitted by stipulation or without objection, and which exhibits are subject to evidentiary objections.

Plaintiffs propose that the trial be scheduled for the first available date on or after November 1, 2014.  Plaintiffs anticipate that ten (10) days will be sufficient for the trial of this certified class action.

**H.      Referring matters to a magistrate judge or a master.**

Plaintiffs do not recommend that any pending matters be referred to a magistrate judge or a master.

**I.      Settling the case and using special procedures to assist in resolving the dispute when authorized by statute or local rule.**

The parties participated in formal mediation in August 2012 under the supervision of Professor Eric Green of Resolutions, LLC.  No agreement was reached at mediation.

**J.      Determining the form and content of the pretrial order.**

As this Court has already entered its pre-trial order detailing the Parties' obligations in advance of the September 4, 2014 pre-trial conference, Plaintiffs do not believe there is anything additional to do regarding this topic.

**K.      Disposing of pending motions.**

There are no pending motions at this time.

**L.      Adopting special procedures for managing potentially difficult or protracted actions that may involve complex issues, multiple parties, difficult legal questions, or unusual proof problems.**

Plaintiffs do not anticipate any manageability issues concerning the trial.  A detailed trial plan was filed by the Plaintiffs in support of the motion for class certification.  (S.D. Fla. DE # 2272).   Plaintiffs provide an updated trial plan below.  In certifying the class and subclasses identified above (*supra* at p. 4), the Court found that the proposed trial plan reflects that a manageable and efficient trial can be conducted.  (S.D. Fla. DE # 2673 at pp.21-22).  Plaintiffs' trial plan provides a roadmap to aid the Court in assessing how a single trial should be conducted against BancorpSouth Bank on behalf of multiple classes under federal law and eight states' laws in an efficient and manageable manner.

BancorpSouth Bank used uniform form contracts for all Class members.  Class members were forced to accept BancorpSouth Bank's contract terms on a "take-it-or-leave-it" basis.   There was no opportunity to negotiate the terms, and no material variations among them.  Similarly, the testimony of BancorpSouth Bank's employees and its documents demonstrate that the bank applied its overdraft policies uniformly to all Class members.  The testimony of BancorpSouth Bank's witnesses and its documents also demonstrate that BancorpSouth Bank's unlawful scheme defrauded its customers out of millions of dollars in additional overdraft fees.

Plaintiffs envision a single trial lasting nine to ten days.  First, Plaintiffs will present their case-in-chief with respect to all claims, submitting common evidence of BancorpSouth Bank's wrongdoing, class-wide injury and total damages.  Plaintiffs will present their case through the testimony of a number of BancorpSouth Bank's employees and documents, through the testimony of Plaintiff Shane Swift, and his wife, Trina Swift, and through their three expert witnesses, Arthur Olsen, Bruce McFarlane and Steven Fried.  Because BancorpSouth Bank's policies were uniform across all Class members during the entire class period, presentation of evidence demonstrating the bank's conduct will not be overly complex.

Second, the burden shifts to BancorpSouth Bank to present its defenses.  Based on discovery conducted and witnesses it disclosed, Plaintiffs anticipate that BancorpSouth Bank will present its defenses through the testimony of its own employees and its three designated experts, Steven Visser, Michael Barone, and Paul A. Carrubba.

Third, Plaintiffs will present their rebuttal.

Fourth, liability and relief will be determined for all claims.  Most, if not all, of Plaintiffs' claims will be decided by the jury.  Then, to the extent there are any remaining unconscionability claims (or issues related to such claims) for the Court to decide, the Court would decide them after the jury returns its verdict.  To the extent Plaintiffs prevail on their claims, judgment in a total monetary sum will be entered based on the amounts awarded by the jury and/or the Court for the Subclasses.  A post-judgment administrative proceeding will follow, in which BancorpSouth Bank's data will be used to distribute checks to each individual Class member based on Plaintiffs' expert's damage

calculations.  This will be done systematically and without requiring Class members to submit proofs of claim.  The Court will be asked to approve this final allocation of damages, which should be of no concern to BancorpSouth Bank.[4]  On the other hand, if BancorpSouth Bank prevails on all claims, then judgment dismissing the action with prejudice would be entered.

For all of their claims for relief, Plaintiffs will rely on common proof derived directly from BancorpSouth Bank's own employees and documents, and from Plaintiffs' experts.  Below is an evidentiary outline demonstrating how this case will be tried as a class action.

### 1.  Plaintiffs Will Prove with Common Evidence that BancorpSouth Bank Breached the Covenant of Good Faith and Fair Dealing

All states recognize an implied covenant of good faith and fair dealing in every contract.[5]  Further, "when one party is given discretion to act under a contract, said discretion must be exercised in good faith."  (S.D. Fla. DE # 305 at 19).  The common law implies the duty of good faith and fair dealing in every contract in terms of performance and enforcement.  *See* RESTATEMENT (2D) OF CONTRACTS §205 (1981) (the

---

[4]  It is common for courts to have follow-on proceedings regarding damages allocation, even if they involve individualized damage proceedings (which will not be necessary here).  *See*, *e.g.*, *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004); *Bell Atl. Corp. v. AT&T Corp.*, 339 F.3d 294, 306 (5th Cir. 2003); 3 CONTE & NEWBERG, NEWBERG ON CLASS ACTIONS, § 9:53 at 429-30 (4th ed. 2002) (collecting cases); 7B CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY K. KANE, FEDERAL PRACTICE AND PROCEDURE § 1781 (2d ed. 1986).

[5]  Certain states recognize a claim for breach of the covenant of good faith and fair dealing as a separate and independent claim from breach of contract, while other states treat breach of the covenant of good faith and fair dealing as a species of breach of contract.

"RESTATEMENT OF CONTRACTS").  In other words, each party to a contract has a duty to refrain from doing anything to unfairly interfere with the rights of any other party to receive the benefits of the contract.  *Id*.  Good faith and fair dealing includes exercising one's discretion in carrying out the contract in good faith.  (S.D. Fla. DE # 305 at 19).

The law of good faith and fair dealing is largely uniform.  Forty-nine jurisdictions either directly cite or paraphrase the RESTATEMENT OF CONTRACTS as to the implied covenant of good faith and fair dealing.  Some states treat the implied covenant of good faith and fair dealing as a separate cause of action.  For those that do not, the good faith and fair dealing claims are subject to the elements of that state's breach of contract claims.

Plaintiffs have grouped the eight states where BancorpSouth Bank operated retail banking operations during the class period together into a single subclass for which materially identical legal standards apply.  This subclass treats the implied covenant claims as part of the breach of contract claims.  The states included are Alabama, Arkansas, Florida, Mississippi, and Tennessee.  The common elements that must be proven to establish a breach of the duty of good faith and fair dealing in these states are: (i) a valid contract; (ii) the defendant breached the contract by unfairly interfering with the plaintiff's rights to receive benefits under the contract; and (iii) resulting damages.

Plaintiffs will prove with evidence common to all Class members that BancorpSouth Bank did not act in good faith when it exercised discretion under its account agreements with Class members.  Evidence adduced during discovery demonstrates that proof of Plaintiffs' claim is found in BancorpSouth Bank's own

documents and the testimony of its current and former employees.

For example, BancorpSouth Bank's account agreements were standardized form contracts that were remarkably uniform across the eight states in which BancorpSouth Bank did retail business during the class period. The account agreements were given to customers when they opened an account and/or during the time that they maintained their accounts and were available in all BancorpSouth Bank branch offices. Upon implementing high-to-low posting in January 2003, and continuing throughout the class period, the boilerplate form contracts BancorpSouth Bank provided to its retail banking customers, on a non-negotiable "take-it-or-leave it" basis, were many pages long, with small type, and contained similarly vague and misleading disclosures that purported to reserve discretion to BancorpSouth Bank regarding its high-to-low sequencing and overdraft fee practices.

In all of BancorpSouth Bank's agreements, the reordering of debit transactions is discretionary. Nothing in these uniform agreements permitted BancorpSouth Bank to manipulate the reordering of debit card transactions solely to create overdrafts that would not otherwise exist, to charge overdraft fees when there are sufficient funds in the account, or to reorder the posting of debits over a period of days irrespective of when the transaction occurred. BancorpSouth Bank's conduct in doing so violated the implied covenant of good faith and fair dealing.

In addition to uniform account agreements, other evidence of BancorpSouth Bank's breach will be common and uniform, given that the bank uniformly re-sequenced transactions using a formulaic, automated system and posted debits from highest to

lowest for all Class members.  BancorpSouth Bank employed a secret "Overdraft Matrix Limit" for Class members in order to authorize transactions and charge overdraft fees; and provided unclear balance information to all Class members.

Common evidence will also be introduced to demonstrate that BancorpSouth Bank failed to clearly disclose the circumstances under which it would charge overdraft fees, and that BancorpSouth Bank was well aware of the adverse impact that its scheme had on Plaintiff and the Class – indeed, the fundamental purpose for changing its posting order to high-to-low, based upon the recommendations of its consultant, was that it would generate millions of dollars more annually.

### 2. Plaintiffs Will Prove with Common Evidence that BancorpSouth Bank's Overdraft Practices are Substantively and Procedurally Unconscionable

In denying BancorpSouth Bank's motion to dismiss and later its motion for summary judgment, the District Court ruled that Plaintiffs sufficiently pled the following elements of *procedural* unconscionability:   (i) there is a tremendous disparity in sophistication and bargaining power between Plaintiffs and the bank; (ii) the deposit agreements were contracts of adhesion – that is, Plaintiffs and Class members were not presented with an option to negotiate the terms, and those terms were set out in voluminous boilerplate language; and (iii) Plaintiffs and Class members were denied any meaningful opportunity to opt out of the so-called "overdraft protection" programs.  (S.D. Fla. DE # 1305 at 2).  The District Court also ruled that Plaintiffs sufficiently pled the following elements of *substantive* unconscionability:   (i) no reasonable person would have agreed to allow the bank to post debits in a manner designed solely to maximize the

number of overdraft fees; and (ii) the amount of overdraft fees is unconscionably excessive because the fees are not reasonably related to the costs or risks associated with providing overdraft protection.  (S.D. Fla. DE # 1305 at 2).

The law of unconscionability is substantially uniform across all states.  All of the states where BancorpSouth Bank operated retail banking operations during the class period, with the exception of Louisiana, have adopted statutes that are the same or substantially identical to Uniform Commercial Code ("U.C.C.") §2-302.[6]  Plaintiffs have grouped the states together into two subclasses for which materially identical legal standards apply.  The states in Subclass No. 1, which comprise the majority of states, require both substantive and procedural unconscionability.  These states are:  Alabama, Arkansas, Florida, Louisiana, Tennessee, and Texas.  The states in Subclass No. 2 require only substantive *or* procedural unconscionability.  If the Subclass No. 1 representatives prove both substantive and procedural unconscionability, they have necessarily proved the claims of Subclass 2.  The fact finder will be asked to state on the verdict form whether both procedural and substantive unconscionability are proven.  If the answer to

---

[6]  U.C.C. §2-302 (2011) provides:

(1) If the court as a matter of law finds the contract or any term of the contract to have been unconscionable at the time it was made, the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable term, or it may so limit the application of any unconscionable term as to avoid any unconscionable result.

(2) If it is claimed or appears to the court that the contract or any term thereof may be unconscionable, the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose, and effect to aid the court in making the determination.

one inquiry or both is "yes," the Subclass 2 claims are proved.

Plaintiffs will prove the elements of unconscionability with common evidence, which will include evidence of BancorpSouth Bank's financial resources and sophistication in devising the overdraft fee program; the form contracts with boilerplate language that BancorpSouth Bank provided to all of its retail banking customers; BancorpSouth Bank's common failure to provide Plaintiff and Class members with any meaningful opportunity to negotiate or change the terms of their deposit agreements, or to opt out of the bank's overdraft payment service; and consumer and employee confusion and complaints regarding the substantive unfairness of the terms of BancorpSouth's overdraft scheme.

### 3. Plaintiffs Will Prove With Common Evidence that BancorpSouth Bank Was Unjustly Enriched

The law of unjust enrichment is largely uniform. Most states have simply adopted a variation of the definition of unjust enrichment in RESTATEMENT (FIRST) OF RESTITUTION §1, which provides that a party may be required to make restitution if she is unjustly enriched at the expense of another. Plaintiffs grouped the states together into a single subclass for which materially identical legal standards will apply. These states follow the definition of unjust enrichment in RESTATEMENT (FIRST) OF RESTITUTION §1. The states included are Arkansas and Mississippi. The common elements that must be proven to establish unjust enrichment in these states are: (i) the plaintiff conferred a benefit; (ii) the defendant accepted or retained that benefit; (iii) under circumstances that would be unjust for the defendant to retain the benefit.

Plaintiffs will also use common evidence to prove their unjust enrichment claim.

First, Plaintiffs will demonstrate that Plaintiff Swift and the Class members conferred a benefit on BancorpSouth Bank that was unjust – paying excessive overdraft fees. This evidence will include the declaration and testimony of Plaintiffs' experts based on a detailed analysis of BancorpSouth Bank's internal documents and overdraft transaction data for the Class. It will also include evidence that BancorpSouth Bank specifically recognized that overdraft fee revenue (*i.e.*, the benefit conferred) would increase as a result of the scheme. Thus, Plaintiffs will show with common evidence that BancorpSouth Bank appreciated that benefit.

Second, Plaintiffs will prove that BancorpSouth Bank's retention of that benefit is unjust. That evidence will include documents and testimony proving that BancorpSouth Bank knowingly devised the scheme in order to increase revenue at the expense of the Class, and that the bank recognized that high to low would generate far more overdraft fees for customers.

### 4. Plaintiffs Will Prove with Common Evidence that BancorpSouth Bank Violated the Arkansas Deceptive Trade Practices Act

The Arkansas Deceptive Trade Practices Act, Ark. Code Ann. §4-88-101, *et seq*. ("ADTPA") prohibits unconscionable, false, or deceptive acts or practices in business, commerce, or trade. The applicable section of the ADTPA is ARK. CODE ANN. § 4-88-107(a)(10).

Using evidence common to all Class members – much of which overlaps with the evidence that will be used to establish BancorpSouth Bank's liability under Plaintiffs' other claims for relief discussed above – Plaintiffs will demonstrate that BancorpSouth Bank violated the ADTPA. That evidence will include the following: BancorpSouth

Bank uniformly re-sequenced transactions and posted debits from highest to lowest for all Class members; employed a secret "Overdraft Matrix Limit" to Class members in order to charge overdraft fees; provided inaccurate balance information to all Class members; failed to disclose the circumstances under which it would charge overdraft fees in its uniform account agreements; was well aware of the adverse impact that its scheme had on the Class; and failed to provide Class members with any meaningful opportunity to opt out of the overdraft practice.  Additional common proof will consist of evidence of BancorpSouth Bank's financial resources and sophistication in devising the overdraft fee program; and consumer complaints regarding the unfairness of the overdraft scheme.

### 5.   Plaintiffs Will Prove with Common Evidence Causation and Amount of Damages

Plaintiffs will demonstrate causation through, *inter alia*, documents and testimony from BancorpSouth Bank employees showing that the injury to Class members in the form of the payment of overdraft fees was foreseeable and an intended consequence of its scheme, including internal documents admitting to the overdraft scheme's impact on the Class and the benefit of the scheme to BancorpSouth Bank.

With the testimony of its experts, Plaintiffs will use common proof to demonstrate injury to Class members and present total damages for the Class without the need to resort to information collected from individual Class members.  BancorpSouth Bank's sophisticated systems contemporaneously recorded and then stored all debit transactions during the class period.  This common evidence has been mined and analyzed by Plaintiffs' expert to (i) identify all BancorpSouth Bank customers who were assessed additional overdraft fees due to BancorpSouth Bank's high-to-low posting order as

compared with alternative posting orders in which debit card transactions are posted either in of low-to-high order or in chronological order based on authorization date and time, and (ii) calculate the amount of the additional overdraft fees that each Class member was charged during the class period.  Based on the analysis of BancorpSouth Bank's customer data performed by Plaintiffs' data expert, at trial Plaintiffs will demonstrate that approximately 195,000 consumer account holders sustained damage based on BancorpSouth Bank's high-to-low re-sequencing of debit card and ATM transaction, and will present two alternative damage calculations, ranging from approximately $49 million to $42 million, for the jury's consideration.

**M.**     **Ordering a separate trial under Rule 42(b) of a claim, counterclaim, crossclaim, third-party claim, or particular issue.**

There is no compelling reason to bifurcate the trial of this case.  There are no counterclaims, crossclaims or third-party claims, and the determination of liability and damages based on the parties' claims and defenses can be efficiently tried in a single trial.

**N.**     **Ordering the presentation of evidence early in the trial on a manageable issue that might, on the evidence, be the basis for a judgment as a matter of law under Rule 50(a) or a judgment on partial findings under Rule 52(c).**

There is no need to order the presentation of the evidence.  Most, if not all, of Plaintiffs' claims will be decided by the jury, making Fed. R. Civ. P. 52(c) inapplicable.

**O.**     **Establishing a reasonable limit on the time allowed to present evidence.**

Plaintiffs' counsel currently believe that their case-in-chief can be presented in

five (5) days, including jury selection, and will confer with counsel for BancorpSouth Bank about the amount of time each side believes will be necessary to put on their respective cases in chief.

**P.    Facilitating in other ways the just, speedy, and inexpensive, disposition of the action.**

At this time, Plaintiffs cannot identify any issues that could hamper the just, speedy, and inexpensive disposition of this action.  Once the parties have submitted their pre-trial stipulation, the Court will be in a position to preside over the trial of this action in a just and speedy manner.

**III.    Other Pretrial Management Issues For The Court's Consideration**

None at this time.

Dated:  June 25, 2014.

/s/ Bruce S. Rogow
Bruce S. Rogow, Esquire
Florida Bar No. 067999
brogow@rogowlaw.com
**BRUCE S. ROGOW, P.A.**
Broward Financial Center
500 East Broward Boulevard
Suite 1930
Fort Lauderdale, FL  33394
Tel: 954-767-8909
Fax: 954-764-1530

/s/ Jonathan M. Streisfeld
Jeffrey M. Ostrow
Florida Bar No.: 121452
ostrow@kolawyers.com
Jonathan M. Streisfeld
Florida Bar No.: 117447
streisfeld@kolawyers.com
**KOPELOWITZ OSTROW P.A.**

/s/ Robert C. Gilbert
Robert C. Gilbert, Esquire
Florida Bar No. 561861
rcg@grossmanroth.com
David M. Buckner, Esquire
Florida Bar No. 60550
dbu@grossmanroth.com
**GROSSMAN ROTH, P.A.**
2525 Ponce de Leon Boulevard
Eleventh Floor
Coral Gables, FL 33134
Tel: 305-442-8666
Fax: 305-779-9596

Darren T. Kaplan
Georgia Bar No.: 172670
dkaplan@chitwoodlaw.com
**CHITWOOD HARLEY HARNES, LLP**
2300 Promenade II
1230 Peachtree Street, N.E.

200 S.W. First Avenue, 12th Floor
Fort Lauderdale, FL 33301
Telephone: (954) 525-4100
Facsimile: (954) 525-4300

Michael W. Sobol, Esquire
California Bar No. 194857
msobol@lchb.com
Roger N. Heller, Esquire
California Bar No. 215348
rheller@lchb.com
**LIEFF CABRASER HEIMANN &**
  **BERNSTEIN L.L.P.**
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111
Tel: 415-956-1000
Fax: 415-956-1008

*Motion for Admission to be Filed*

Atlanta, GA
Telephone: (404) 873-3900
Facsimile: (404) 876-4476

*Motion for Admission to be Filed*

*Counsel for Plaintiff and the Certified Class*

## CERTIFICATE OF SERVICE

I hereby certify that on June 25, 2014, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/ Jonathan M. Streisfeld*
Jonathan M. Streisfeld
Florida Bar No. 117447
