**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**GAINESVILLE DIVISION**

| | | |
|---|---|---|
| **SHANE SWIFT, ON BEHALF OF** | : | |
| **HIMSELF AND ALL OTHERS** | : | |
| **SIMILARLY SITUATED,** | : | |
| | : | **CIVIL ACTION FILE** |
| **Plaintiff,** | : | **NO. 1:10-CV-00090-MMP-GRJ** |
| | : | |
| **v.** | : | |
| | : | |
| **BANCORPSOUTH BANK,** | : | |
| | : | |
| **Defendant.** | : | |

**BANCORPSOUTH'S INITIAL MEMORANDUM**
**REGARDING PRETRIAL ISSUES**

Pursuant to the Court's Order for Pre-Trial Conference and Setting Trial (the "Order") (Doc. 49, Defendant BancorpSouth Bank ("BancorpSouth") submits this initial memorandum regarding pretrial issues.

## I.    CASE STATUS

**A.    Case Posture.**

This case is nearly ready for trial, but important pretrial decisions remain to be made. Discovery is complete.[1] The MDL Court certified a class and appointed Swift as the class representative. (MDL Doc. 2673.) Class notice was sent to 185,280 members of the certified class, of which 238 members timely opted out. (MDL Docs. 3242, 3338,

---

[1] No motion practice arose out of discovery in the MDL Court—the parties were able to cooperate to work out discovery disputes and efficiently complete complex discovery. BancorpSouth has requested a supplemental report from Swift's expert, Arthur Olsen, and Swift's counsel has committed to producing that report. In addition, the parties have agreed to provide supplemental and amended discovery information as required by the Federal Rules of Civil Procedure.

3342, 3589.) Briefing on a motion to dismiss, motions for summary judgment, motions to strike expert witnesses, and several additional motions is complete, with orders entered by the MDL Court.[2] (MDL Docs. 1305, 3229, 2996, 2997, 2999, 3258, 3655, 3682.)

The bulk of what remains before setting a trial date is for the Court to decide pragmatic issues related to managing this trial and to clear up inconsistencies that remain in the record. Respectfully, if the parties cannot reach an agreement, these issues should be decided before setting a trial date because additional motions and hearings may be necessary depending on the Court's decisions. Resolving these issues before trial will ensure that this case progresses logically and efficiently to verdict, without prejudice to the litigants.

**B.      The sole class representative: Shane Swift and his Arkansas law claims.**

Plaintiff Shane Swift, the only class representative, is a former checking account customer of BancorpSouth. Throughout Swift's relationship with BancorpSouth, he regularly withdrew more money (including via debit card transactions) than he had in his checking account, and incurred overdraft charges as a result. Swift's lawsuit does not question the propriety of overdraft charges themselves. Instead, Swift attacks the **order** in which BancorpSouth posts electronic debit transactions to customers' accounts at the end of each banking day, despite the fact that BancorpSouth processes transactions consistent

---

[2] Although the MDL Court set an "all motions" deadline 19 months ago (MDL Doc. 2834 (setting October 9, 2012 as deadline)), consistent with the Court's Order for Pre-Trial Conference and Setting Trail (N.D. Fla. Doc. 49), BancorpSouth intends to file appropriate motions in limine focused on clarifying, organizing, and streamlining trial at an appropriate time. In addition, BancorpSouth notified opposing counsel that it would do so upon remand from the MDL Court. (MDL Doc. 2998.)

with its account agreements and other disclosures.[3] Because all transactions are processed in a batch, the bank must place them in some order. During the relevant period, BancorpSouth posted all deposits first, then all debits, with each debit transaction separately posted in order from highest to lowest by dollar amount.[4] (*See generally* MDL Doc. 2673.) Almost all the facts regarding the BancorpSouth account agreements, disclosures, and posting practices, as well as Swift's transaction data, are undisputed; BancorpSouth anticipates that the parties will be able to stipulate to these facts. (*See* Swift's Response to BancorpSouth's Statement of Material Facts in Support of Summary Judgment, MDL Doc. 3043-1 at 3–6 (Swift does not dispute majority of material facts).)

Swift alleges that BancorpSouth's policy of posting electronic debit transactions on each banking day from highest-dollar-amount to lowest-dollar-amount caused him to pay more overdraft fees to BancorpSouth than he would have otherwise paid. Swift characterizes BancorpSouth's disclosed posting order as "re-ordering," and claims it is wrongful because it causes more transactions to trigger overdraft fees than would occur under other, alternative posting orders.[5] Swift argues that BancorpSouth's posting practice is a breach of contract or, alternatively, somehow unconscionable. Swift has refused to designate a "proper" or "correct" alternative posting order or point to any

---

[3] The governing Deposit Agreement and the Account Information Statement are attached hereto as <u>Exhibit A</u> and <u>Exhibit B</u>. These were attached to Swift's Second Amended Complaint (MDL Doc. 994.)

[4] Although Swift only challenges the posting of electronic debits in this lawsuit, checks and ACH transfers also were among the debits posted to Swift's account.

[5] Swift's characterization of BancorpSouth's disclosed posting order as "re-ordering" is inaccurate advocacy. BancorpSouth ordered transactions only once, at the end of the banking day, before posting them all in one daily batch. No re-ordering occurred.

authority requiring any specific order, instead leaving that decision to the jury at trial. (*See, e.g.*, MDL Doc. 3498 at 7.)

Based on Swift's allegations, he is pursuing claims for breach of the duty of good faith and fair dealing, a declaratory judgment of unconscionability, unjust enrichment, and a violation of the Arkansas Deceptive Trade Practices Act (the "ADTPA"). Swift, however, does not pursue all of these claims for the class members in every state; instead, Swift is pursuing the patchwork of claims illustrated in the chart below (with the applicable class period):

| | Good Faith/ Fair Dealing | Unjust Enrichment | Unconscionability | ADTPA |
|---|---|---|---|---|
| **Alabama** | May 18, 2004- Aug. 13, 2010 | | May 18, 2004 - Aug. 13, 2010 | |
| **Arkansas** | May 18, 2005- Aug. 13, 2010 | May 18, 2007- Aug. 13, 2010 | May 18, 2005 - Aug. 13, 2010 | May 18, 2005- Aug. 13, 2010 |
| **Florida** | May 18, 2006 -Aug. 13, 2010 | | May 18, 2006 - Aug. 13, 2010 | |
| **Louisiana** | | | Jan. 1, 2003 - Aug. 13, 2010 | |
| **Mississippi** | May 18, 2007- Aug. 13, 2010 | May 18, 2007- Aug. 13, 2010 | May 18, 2007 - Aug. 13, 2010 | |
| **Missouri** | | | May 18, 2007 - Aug. 13, 2010 | |
| **Tennessee** | May 18, 2004 -Aug. 13, 2010 | | May 18, 2004 - Aug. 13, 2010 | |
| **Texas** | | | May 18, 2006 - Aug. 13, 2010 | |

Thus, for example, although Swift is pursuing all four claims on behalf of Arkansas class members, Swift is pursuing only a declaratory judgment for unconscionability on behalf of Louisiana, Missouri, and Texas class members.

C.      **BancorpSouth's Defenses.**

At trial, BancorpSouth will present a number of affirmative defenses, depending on how the case progresses. These defenses include unclean hands, waiver or license, consent, failure to satisfy conditions precedent, failure to mitigate damages, and the voluntary payment doctrine, as well as a course of dealing defense applicable only to the unjust enrichment, unconscionability, and ADTPA claims. (*See* MDL Docs. 1693, 3668, & 3682.)

## II.      PRETRIAL ISSUES TO BE DECIDED

Although many motions have been ruled on and discovery is complete, this case is not ready for trial. Several balls-and-strikes calls remain to be made; these decisions will determine the scope and conduct of the trial, and can avoid a trial that is rife with confusing, inconsistent presentations. Before trial, the Court should decide:  (1) whether an unconscionability claim may proceed, and if it does, must it be tried to a jury or the Court; (2) whether an independent breach of contract claim may proceed; (3) whether the trial should be conducted in phases, and (4) discrete evidentiary issues. Decisions on these issues will, in turn, determine whether any motions in limine are necessary and will ensure a swift and just resolution of this case.

A.      **The Court should rule on Swift's unconscionability claim.**

Arkansas law does not recognize an affirmative claim for unconscionability and Swift's attempt to use a declaratory judgment to circumvent Arkansas law should be rejected. In the alternative, the Court should act as fact finder, before trial, and decide whether the challenged provisions in BancorpSouth's Deposit Agreement are

unconscionable. The Court **must** make this decision because Swift's purported unconscionability claim is an equitable declaratory judgment claim, and the Court **should** make this decision because it will guide whether Swift's case goes forward as a breach of contract case or a quasi-contract case—it cannot go forward as both. Otherwise, the trial will be unnecessarily complicated and Swift will be forced to prove diametrically opposed theories. It is hard to imagine a more confusing trial than one predicated on the plaintiff putting on evidence of one set of facts and the opposite of that same set of facts: a coherent verdict form would be nearly impossible to fashion, the jury inevitably would be confused, and error likely would follow.[6]

      1.      <u>The Court can and should correct the MDL Court's erroneous rulings allowing Swift's unconscionability claim to proceed.</u>

As BancorpSouth has argued from the beginning of this case, unconscionability is an affirmative defense, not a cause of action under Arkansas law. To sidestep unconscionability's uniform characterization as an affirmative defense and to avoid dismissal of a nonexistent cause of action, Swift argued in his opposition to summary judgment that he is "seeking affirmative declaratory relief that the terms of a contract are

---

[6] If the Court does not decide unconscionability prior to the trial, the Court should add an additional phase of the trial for the equitable claims. *See, e.g., Hanwha Azdel, Inc. v. C&D Zodiac, Inc.*, No. 6:12-CV-00023, 2013 U.S. Dist. LEXIS 108776, *8 (W.D. Va. Aug. 2, 2013) ("The factor which tips in favor of bifurcation is that Counts I, II, and III assert legal claims for a jury to resolve—breach of contract and the resulting monetary damages [the plaintiff] alleges it suffered. Counts IV and V, however, seek equitable relief which only the court can award. Based on these factors, I find that bifurcation of liability and damages in Counts IV and V will promote judicial economy."). *See also Daniels v. Loizzo*, 178 F.R.D. 46, 47 (S.D.N.Y. 1998) ("Judicial efficiency is served where a separate trial disposes of one claim or establishes a necessary element of a second claim.").

unconscionable" and that his claim is "a cause of action for unconscionability where the plaintiff [seeks] declaratory relief." (MDL Doc. 3043 at 10, 11.) The MDL Court relied on Swift's late-arriving declaratory judgment theory to deny summary judgment on the unconscionability claim. (*See* Order on Mtns. for Summ. J., MDL Doc. 3684 at 14–15 (describing Swift's unconscionability claim as "seeking affirmative declaratory relief that the terms of a contract are unconscionable.").

Thus, Swift's unconscionability "claim" in fact seeks a declaration that the account agreement, or some part of it, is unconscionable. As a remedy accompanying this declaration, Swift seeks "damages as supplemental relief" under the declaratory judgment provisions of Arkansas and federal law.[7] (*See* MDL. Doc. 3043 at 10 (citing Ark. Code Ann. § 16-111-103(a); Ark. Code Ann. § 16-111-110; 28 U.S.C. §§ 2201–2202).) Swift should not be able to use the declaratory judgment statute to sidestep state law prohibiting an affirmative cause of action, and the MDL Court erred by allowing the claim to proceed.

---

[7] Swift's theory is that he is entitled to money damages based on a judgment declaring the account agreement unconscionable. This position is untenable. *See Tiller v. State Farm Mut. Auto. Ins. Co.*, 549 F. App'x. 849, 854 (11th Cir. 2013) (dismissing claims because they are "direct actions for money damages masquerading as claims for equitable and declaratory relief"); *B. Braun Med., Inc. v. Abbott Labs.*, 124 F.3d 1419, 1428 (Fed. Cir. 1997) (holding that money damages after a declaratory judgment for the affirmative defense of patent misuse may not be awarded because the proper remedy is unenforceability; in other words, the defense "may not be converted to an affirmative claim for damages simply by restyling it as a declaratory judgment."). Even if damages were available, awarding them is within the discretion of the Court. *See* 28 U.S.C. § 2202 (further relief "**may** be granted, after reasonable notice and hearing") (emphasis added). In any event, unjust enrichment is the vehicle to obtain damages outside of the contract— even though Swift seeks precisely the same damages in his breach of contract claim.

As BancorpSouth demonstrated in both its motion to dismiss and motion for summary judgment, Arkansas law **does not recognize** an affirmative claim for unconscionability. (MDL Doc. 2999-1 at 9–13; MDL Doc. 3112 at 8–9.) Much like the claimant's attempt to use a declaratory judgment to get money damages on the affirmative defense of patent misuse in *B. Braun Med., Inc. v. Abbott Labs.*, "monetary damages may not be awarded 'under a declaratory judgment . . . based on [unconscionability],' because [unconscionability] simply renders the [contract] unenforceable. In other words, the defense of [unconscionability] may not be converted to an affirmative claim for damages simply by restyling it as a declaratory judgment." 124 F.3d 1419, 1428 (Fed. Cir. 1997). *See also King v. Carolina First Bank*, No. 6:13-CV-02264-TMC, 2014 U.S. Dist. LEXIS 77027, *20 (D.S.C. June 6, 2014) (in a similar overdraft-related case, the Court dismissed the plaintiffs' declaratory judgment claim for unconscionability because "Plaintiffs are clearly seeking damages based upon this claim . . . [a]nd in South Carolina, 'the only remedies available for common law unconscionability are equitable.'"). Swift's declaratory judgment scheme is an attempt to make an end-run around Arkansas law.

Although the MDL Court let the affirmative unconscionability claim proceed because "this is not the ordinary case" (MDL Doc. 3682 at 14), this principle sets a dangerous precedent. All litigants believe their cases are special, and courts must be wary of any argument by a litigant that the normal rules of law do not apply to his claims. Indeed, a poorly-conceived or loosely-applied exception to a rule of law easily could swallow the rule. *See, e.g.*, *Cuomo v. Clearing House Ass'n, L.L.C.*, 557 U.S. 519, 530 (2009) (avoiding interpreting an exception in a manner that "would swallow the rule").

The Court should examine whether Swift's case truly "is not the ordinary case," and if so, whether the MDL Court's novel exception to Arkansas's traditional unconscionability law is justified. Nothing in this case mandates such an exception to the normal rule of law.[8]

In allowing the unconscionability claim to proceed, the MDL Court erred and this Court has jurisdiction to review the MDL Court's orders on such issues after remand.[9] For example, *In re Ford Motor Co.*, 591 F.3d 406 (5th Cir. 2009), the Fifth Circuit made clear that a Court receiving a case from a MDL "should use the law of the case doctrine to determine whether to revisit a transferee court's decision." *Id.* at 411. Although the law of the case doctrine ensures that "transferor courts respect the transferee court's decisions," it also "has the virtue of allowing transferor courts to correct serious errors of the transferee court." *Id.* BancorpSouth submits that the MDL Court's ruling on

---

[8] The MDL Court's reason for deeming this is "not the ordinary case" was foundationally flawed. The MDL Court surmised that "the customer never has the opportunity to raise unconscionability as a defense for nonpayment. The only opportunity to do so is through a lawsuit filed by the customer, after payment has been made." (MDL Doc. 3682 at 14.) This is simply wrong. For a customer to overdraft his or her account, the account must go into a negative balance. Thus, any overdraft fees are charged against an account with no funds to pay those overdraft fees. Without funds in the account, there are only two ways a bank may collect overdraft fees. First, the customer may voluntarily deposit funds into the account to cover these fees. Or, second, if the customer did not voluntarily deposit funds because the customer disputes the fees, the bank could collect the fees through a collections action in court. A collections action is the paradigmatic opportunity for the customer to "raise unconscionability as a defense for nonpayment." Thus, a customer who disputes the fees as unconscionable simply would not pay the fees and then raise unconscionability as a defense should the bank attempt to collect the fees.

[9] All judicial rulings in this case now belong to this Court. As such, any appellate review of rulings in this case will be review of **this** Court's decisions. The Court has both the authority and the obligation to review all pretrial rulings for error, and to correct any errors. Indeed, it is appropriate for the Court to make a sifting review of the orders entered to date as it familiarizes itself with this case.

unconscionability was a serious error, will taint any trial of the issue, and will ultimately be rejected on appeal.

Courts in this Circuit have adopted the *In re Ford* rationale. For example, in *Hill v. Ford Motor Co.*, 975 F. Supp. 2d 1351 (N.D. Ga. 2013), the court made the practical point that "[o]n appeal, the appellate court is only going to care whether the ultimate ruling was right, not whether the judge's first call on the issue was arguably meritorious." *Id.* at 1358. The goal, then, is for the Court to ensure that the decisions that will govern and shape the trial are correct. Because "the law of the case doctrine 'is flexible, [] a court's previous rulings may be reconsidered as long as the case remains within the jurisdiction of the district court.'" *Id.* at 1359 (citing *United States v. Williams*, 728 F.2d 1402 (11th Cir. 1984). The Court, moreover, also has the inherent authority to manage its docket at it sees fit. The MDL Court erred in allowing unconscionability to proceed. This Court should correct that error. Getting it right is what matters.[10]

2.  Alternatively, the Court must decide the merits of the unconscionability claim postured as a declaratory judgment claim.

Even if the Court does not revisit the MDL Court's erroneous unconscionability decision, the Court must rule on the merits of Swift's unconscionability claim before trial.

In this analysis, the Court should note that Swift no longer meets the jurisdictional requirements to proceed with a declaratory judgment claim, because Swift no longer has a checking account with BancorpSouth. The jurisdictional requirement that declaratory relief must address **future harm** cannot be met because Swift cannot be charged any

---

[10] Here, getting it right also will make the case more manageable without costing Swift a single measure of damages.

more overdraft fees. *See, e.g.*, *Malowney v. Federal Collection Deposit Group*, 193 F.3d 1342, 1346 (11th Cir. 1999) ("In order to demonstrate that a case or controversy exists to meet the Article III standing requirement when a plaintiff is seeking injunctive or declaratory relief, a plaintiff must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future."); *Emory v. Peeler*, 756 F.2d 1547, 1552 (11th Cir. 1985) (For a declaratory judgment to issue, "there must be a substantial continuing controversy between parties having adverse legal interests."). Thus, without an account, Swift cannot prosecute a declaratory judgment claim and he cannot represent a class on that claim. *See, e.g.*, Fed. R. Civ. P. 23(a) (requiring common questions of law and fact for class representative).

In any event, a declaratory judgment must be decided by the Court, not the jury. Under Arkansas law, declaratory relief is equitable in nature and can only be heard by the Court. *See Baptist Health v. Murphy*, 2010 Ark. 358, 13 (2010) ("[T]he constitutional right to a jury trial does not extend to equity. . . . Both declaratory judgments and injunctions have long been recognized as matters of equity."). The remainder of Swift's claims may be heard by a jury, but the declaratory judgment claim may not.

To resolve this issue, BancorpSouth proposes that the Court conduct an evidentiary hearing on the unconscionability/declaratory judgment claim prior to the jury trial. No facts are legitimately in dispute on this claim, so the Court could sit as the fact-finder, properly and efficiently.[11] The Court's trial may consist of hearing stipulated

---

[11] As Swift's counsel admitted to this Court at the status conference, "the facts are not really in dispute about the cases. There's no question what the bank did." (*See* N.D. Fla.

evidence, live testimony (if necessary), and oral argument on this issue; the Court also may benefit from pre-bench-trial briefing from the parties.

      3.    <u>The Court should decide the merits of the unconscionability claim because it will streamline and simplify the trial</u>.

As currently postured, the case would go forward with Swift simultaneously attempting to prove both contract and quasi-contract claims. On the one hand, Swift presumably would attempt to persuade a jury that BancorpSouth breached its account agreement because it breached the duty of good faith and fair dealing by posting debit transactions in high-to-low order. (MDL Doc. 2999-1 at 4–9.) On the other hand, Swift would attempt to prove that the account agreement was unconscionable and therefore unenforceable, and that BancorpSouth was unjustly enriched by its overdraft policies. (MDL Doc. 2999-1 at 9–14, 16.) At trial, Swift simultaneously will have to prove <u>both</u> that there was a contract that was breached <u>and</u> that no contract existed at all.[12] Such directly contradictory positions undoubtedly will lead to an incoherent verdict form and a confused jury.

The confusion stems from Swift's attempt to prosecute inconsistent class claims in the alternative: if the account agreement is found to be void, then the unconscionability, unjust enrichment, and ADTPA claims go forward; but the good faith and fair dealing claim, which is predicated on a valid account agreement, cannot go forward. (*See, e.g.*, Summary Judgment Order, MDL Doc. 3682 at 21 ("Plaintiffs acknowledge that they

---

Hearing on Mtn. to Transfer Venue, May 8, 2014, at 10:2–4.) (*See also* Swift's Response to BancorpSouth's Statement of Material Facts in Support of Summary Judgment, MDL Doc. 3043-1 at 3–6 (Swift does not dispute majority of material facts).)

    [12] A decision tree outlining the necessary decisions is attached as <u>Exhibit C</u>.

cannot recover judgment under both their contract-based claims and unjust enrichment claims, but they are permitted to plead and pursue these alternative claims"); Swift's Opp. to BancorpSouth's Mtn. for Summ. J., MDL Doc. 3043 at 17.) Thus, even if Swift proves everything he believes he can, he cannot prevail on all of his claims.

A decision by the Court on unconscionability before the jury trial will streamline the case before the jury and avoid Swift attempting to prove directly inconsistent theories to the jury. This would clarify the issues for the jury to decide and minimize confusion. Accordingly, if the Court decides in favor of Swift on unconscionability and thereby voids the account agreement, Swift will pursue his non-contract claims at the jury trial (unjust enrichment and the ADTPA). If the Court decides in favor of BancorpSouth on unconscionability and thereby upholds the account agreement, Swift will pursue his contract claims at the jury trial (good faith and fair dealing and the ADTPA). Not only will a bench trial on Swift's unconscionability/declaratory judgment claim conform with the mandate of Arkansas law that all equitable claims be decided by the Court, but also it will streamline the trial.

Nor will deciding unconscionability now prejudice Swift. Swift appears to contend that the measure of damages is the same for all of Swift's claims—Swift has not made any distinction regarding damages among his claims throughout this case. From Swift's point of view, whether he wins one claim or wins all of his claims is immaterial, because damages are the same for each. In addition, deciding unconscionability now will prevent jury confusion of opposing theories of recovery and protect against reversible error. Thus, Swift will not be prejudiced if the Court conducts the bench trial for Swift's

unconscionability/declaratory judgment claim before the jury trial for the remaining, alternate claims, as required by Arkansas law.

The unconscionability claim is no more than Swift's attempt to plead creatively to survive a motion to dismiss attack. In the early stages of a case, pleading in the alternative may be appropriate because the facts learned through discovery could lend toward one alternative case theory or the other. But **pleading** a case in the alternative is very different than **trying** a case in the alternative. Discovery is over, the facts are fully developed, and now is the time to proceed with only one of Swift's alternative, inconsistent case theories. *See, e.g.*, *Hemispherx Biopharma, Inc. v. Mid-South Capital, Inc.*, 690 F.3d 1216, 1227-28 (11th Cir. 2012) ("Although at trial [the plaintiff] cannot recover against [the defendant] under both its legal (breach-of-contract) and its equitable claims, [the plaintiff] can plead these claims in the alternative and **then elect at trial under which remedy it wants to proceed**.") (emphasis added) The Court should decide the unconscionability claim now to simplify and streamline the trial.

**B.     The Court should clarify whether Swift may present a breach of contract claim and how a claim for good faith and fair dealing may proceed.**

Swift alleged a claim for "Breach of Contract and Breach of the Covenant of Good Faith and Fair Dealing" in his complaint. (MDL Doc. 994 at 25) Although the MDL Court certified a class for a breach of good faith and fair dealing claim, the MDL Court did not specifically certify a class for breach of an explicit term of the governing contract. (Class Certification Order, MDL Doc. 2673 at 22–23.) And Swift did not notify the class that Swift was pursuing a breach of contract claim on their behalf. (*See* Class Notice, MDL Doc. 3589-1 at 41 (notifying the class that Swift "is pursuing the following

claims for BancorpSouth account holders in the following states: Alabama: good faith and fair dealing; unconscionability . . ." but not notifying the class that Swift is pursuing an independent breach of contract claim in any state).)

In the summary judgment briefing and order, however, both Swift and the MDL Court appear to have believed that Swift is pursuing a breach of contract claim on a class basis.[13] (*See* MDL Doc. 3682 at 11, MDL Doc. 3043 at 4.) At this late stage, it is still unclear whether Swift is pursuing—and whether he is permitted to pursue—an independent claim for breach of contract. The Court should resolve this issue before trial. Because the MDL Court did not certify a breach of contract class and because the class did not receive notice of a breach of contract claim, BancorpSouth submits that Swift should not be permitted to pursue this claim.

If the Court allows Swift to proceed on both a breach of contract claim and a good faith and fair dealing claim, BancorpSouth requests that Swift clarify: (1) which specific term(s) of the contract that BancorpSouth breached and how he contends BancorpSouth breached those terms; and (2) how Swift contends that BancorpSouth separately breached its duty of good faith and fair dealing. To date, these allegations have not been clearly identified. For example, the MDL Court's summary judgment order identifies the supposed breach of good faith and fair dealing as an alleged abuse of discretion in the application of the contract term providing that BancorpSouth "may pay any of [debit] in any order we choose, even if the order we choose results in greater insufficient funds fees than if we had chosen to pay them in some other order." (MDL Doc. 3682 at 12.) The

---

[13] That the MDL Court's rationale would so closely hew to Swift's is not surprising, because the order entered was Swift's proposed order nearly verbatim.

MDL Court, however, did not identify any contract term that BancorpSouth breached. (*Id.* at 11–14.)

A court in a similar overdraft-related case dismissed the plaintiffs' breach of contract claim for the same failure to identify a breach of an actual term of the contract. *In re HSBC BANK, USA, N.A., Debit Card Overdraft Fee Litigation*, No. 13-MD-2451-ADS-AKT, ___ F. Supp. 2d, ___, 2014 U.S. Dist. LEXIS 29050, *36 (E.D.N.Y. Mar. 5, 2014) (in a similar overdraft-related case, dismissing the plaintiffs' breach of contract claim "because the Plaintiffs do not allege a breach of an actual term of the contract.").[14] Thus, Swift must identify the term of the parties' contract that BancorpSouth allegedly breached. If he cannot, the claim should be dismissed. *Id.*

BancorpSouth also suggests that the Court analyze whether Swift's claim for good faith and fair dealing claim can proceed in light of the Arkansas Model Jury Instructions on good faith and fair dealing. The Arkansas Model Jury Instructions note:

> Because there is **no cause of action** in tort or contract for breach of the implied covenant of good faith and fair dealing, this instruction should only be given where there is evidence that one party's (or both parties') conduct **prevented, hindered, delayed or impeded** the performance of the express obligations under the contract.

Arkansas Model Jury Instructions (Civil), AMI 2426 Implied Covenant of Good Faith and Fair Dealing (Dec. 2013) (emphasis added).[15] The Arkansas Model Jury Instructions

---

[14] The *HSBC* court later reversed its dismissal of the breach of contract claim after the plaintiffs identified a purportedly breached provision of the contract on a motion for reconsideration. *In re HSBC BANK, USA, N.A.*, ___ F. Supp. 2d, ___, 2014 U.S. Dist. LEXIS 55201, *20 (E.D.N.Y. Apr. 21, 2014). Importantly, Swift has not done so here.

[15] A copy of the Arkansas Model Jury Instructions for a good faith and fair dealing claim is attached hereto as <u>Exhibit D</u>.

continue, noting that "a breach of the implied covenant of good faith and fair dealing remains nothing more than evidence of a possible breach of a contract between parties." *Id.* (citing *Arkansas Research Medical Testing, LLC v. Osborne*, 2011 Ark. 158, 7 (2011)). Thus, Arkansas law and the Arkansas Model Jury Instructions do not recognize an independent cause of action for a good faith and fair dealing claim.

Adding more confusion to Swift's claim, the model jury instruction for good faith and fair dealing is: "[You may consider the alleged *[acts][hindrances]* [and] *[delays]* of [defendant] only as evidence of a breach of the [operative term or obligation] of the contract.]" *Id.* Thus, in Arkansas, good faith and fair dealing is predicated entirely on the identification of an allegedly breached contract term. If Swift is not permitted to proceed on the breach of contract claim, a good faith and fair dealing claim cannot survive on its own. If Swift is permitted to proceed on the breach of contract claim, the model jury instructions make identification of the contract term that BancorpSouth allegedly breached even more important, because good faith and fair dealing is nothing more than evidence of a breach of a specific contract term.

**C.      The trial should be conducted in phases.**

1.      <u>A phased trial is appropriate in this case</u>.

The trial should be conducted in phases for simplicity and to prevent manifest injustice and prejudice to the parties. Federal Rule of Civil Procedure 42 specifically allows a Court to order "a separate trial of one or more separate issues [or] claims" for

"convenience, to avoid prejudice, or to expedite and economize." Fed. R. Civ. P. 42(b).[16]

Nevertheless, "the bifurcation of issues does not always necessitate fully separate trials." *Bayou Fleet P'ship, L.L.P. v. St. Charles Parish*, No. 10-1557, 2013 U.S. Dist. LEXIS 5297, *6 (E.D. La. Jan. 14, 2013). Here, "separate phases rather than fully separate trials will best promote the interest of judicial economy while reducing juror confusion." *Id.* A phased trial here will be more efficient and will not result in any prejudice to Swift. *See* Manual for Complex Litig. § 11.632 (4th ed. 2004) ("Whether the litigation involves a single case or many cases, severance of certain issues for separate trial under Federal Rule of Civil Procedure 42(b) can reduce the length of trial, particularly if the severed issue is dispositive of the case, and can also improve comprehension of the issues and evidence.").

A phased trial will streamline the issues, clarify the order and structure of proof in the trial, and prevent prejudice. In this case, there should be three distinct phases of trial: (1) liability as to Swift individually; (2) damages as to Swift individually, if any; and (3) class-wide damages, if any.[17] A trial with separate liability and damages phases is "the

---

[16] The decision to conduct the trial in phases in "within the court's discretion." *Harrington v. Cleburne County Bd. of Educ.*, 251 F.3d 935, 938 (11th Cir. 2001). Rule 42(b) "confers broad discretion on the district court in this area, permitting bifurcation merely 'in furtherance of convenience.' **That is not a high standard**, and the district court's concern for clarifying the issues to be tried suffices to permit the court to separate the trials." *Id.* (emphasis added). The party seeking a phased trial, furthermore, need only show one of the Rule 42(b) factors of "convenience, to avoid prejudice, or to expedite and economize." *See id.*; *Daniels v. Loizzo*, 178 F.R.D. 46, 47 (S.D.N.Y. 1998).

[17] Although Swift's case is certified as a class action, the trial will focus on evidence related to Swift and Arkansas law. *See, e.g.*, *Cooper v. Southern Co.*, 390 F.3d 695, 713 (11th Cir. 2004) (claims of the class "rise or fall with the fortunes of the class representatives"). The results to Swift, as class representative, will be applied to the class.

most common application of Rule 42(b)." *Robinson v. Sheriff of Cook County*, 167 F.3d 1155, 1157 (7th Cir. 1999). *See also* Wright & Miller, *Federal Practice and Procedure: Civil* § 2390 (3d ed. 2014) ("The separation of issues of liability from those relating to damages is an obvious use for Federal Rule 42(b)."). Class actions, furthermore, routinely benefit from separate liability and damages phases. *See, e.g.*, *Turner v. Murphy Oil USA, Inc.*, 234 F.R.D. 597, 606 (E.D. La. 2006) ("The Fifth Circuit has repeatedly upheld the decisions of district courts to bifurcate class action trials into liability and damages phases."); *Maenner v. St. Paul Fire & Marine Ins. Co.*, 127 F.R.D. 488, 490 (W.D. Mich. 1989) ("The federal courts have used bifurcated trials in class actions when doing so would further convenience, manageability, and the ends of justice. . . . In fact, one court has described this method of proceeding as the one 'generally' adopted in Rule 23(b)(3) class actions."). Nor is a trial with three phases unusual. *See Jackson v. County of L.A.*, 29 F. App'x. 430, 436 (9th Cir. 2001) (affirming trifurcation of trial); *Grumbrecht v. Crown Control Corp.*, No. 99-CV-4921, 2001 U.S. Dist. LEXIS 2359, *4 (E.D. Pa. Mar. 7, 2001) (ordering trifurcation of trial).

    2.    <u>How phases will work in this case</u>.

    BancorpSouth provides the following chart to illustrate the proposed phases:

| | Phase 1 | Phase 2 | Phase 3 |
|---|---|---|---|
| **Issues Tried** | Liability on Swift's Claims | Swift's Individual Damages, if any | Class Damages, if any |
| **Likely Evidence** | Evidence from BancorpSouth<br><br>Evidence from Mr. Swift and Mrs. Swift<br><br>Experts re: Banking Industry and Consumer Issues | Experts re: Proper Measure of Damages<br><br>Experts re: Calculation of Swift's Damages | Experts re: Calculation of Class Damages |
| **Jury** | Yes | Yes | No |
| **Decision** | Whether BancorpSouth is Liable to Swift | The Proper Measure of Damages for Swift | The Calculation of Damages for the Class Based on the Proper Measure of Damages for Swift |

**Phase 1: Liability.**

• <u>Stipulated Facts and Documents</u>: BancorpSouth anticipates that Swift will rely on documents obtained during discovery that memorialize the relationship between Swift and BancorpSouth, including the account agreement, account statements and transaction history, and written disclosures. (*See* Swift's Trial Plan, MDL Doc. 2272 at 3–

5.[18]) BancorpSouth also anticipates that Swift will rely on BancorpSouth's internal documents, including emails. (*See id.*) There are very few disputed facts here and BancorpSouth anticipates that the parties will be able to stipulate to most of the facts.

- Lay Testimony: BancorpSouth anticipates that Swift will rely on testimony from BancorpSouth employees and Mr. and Mrs. Swift. (*See id.*; Plaintiff's Lay Witness List for Trial, N.D. Fla. Doc. 29-7.) In rebuttal, BancorpSouth may call BancorpSouth employees and Mr. and Mrs. Swift. (*See* Defendant BancorpSouth Bank's Preliminary Non-Expert Witness List, N.D. Fla. Doc. 29-8.)

- Expert Testimony: BancorpSouth anticipates that Swift will rely on testimony from Swift's banking industry expert, Steven Fried, regarding his "experience in the banking industry and research of applicable standards of care, commercial reasonableness, practice, regulatory laws and pronouncements, and scholarly articles on the issues, on the conduct by [BancorpSouth] applied to the circumstances of this case." (*See* Fried Expert Report, Sep. 24, 2012, at 3.) In rebuttal, BancorpSouth may call its banking industry expert, Paul Carrubba, and its expert on consumer behavior, Michael Barone.[19]

- Result: The jury will decide whether BancorpSouth's conduct was wrongful within the framework of the causes of action to be decided by the jury.

---

[18] Although Swift presented a Trial Plan in support of his class certification motion (MDL Doc. 2272), that plan is prejudicial, confusing, inefficient, and does not take into account the case as it stands today.

[19] BancorpSouth anticipates moving for directed verdict before this phase goes to the jury if evidence developed by Swift at trial does not satisfy the elements of his claims in Arkansas or does not satisfy the elements of the class claims in the other states Swift represents.

**Phase 2: Swift's Damages.**

- <u>Stipulated Facts and Documents</u>: BancorpSouth anticipates that Swift will rely on Swift's account statements and transaction history obtained during discovery.

- <u>Lay Testimony</u>: None. BancorpSouth anticipates that the parties will stipulate to the authenticity of the accounts statements and transaction history.

- <u>Expert Testimony</u>: BancorpSouth anticipates that Swift will rely on testimony from his damages methodology expert, Bruce McFarlane, regarding "the use of a damages methodology involving one or more alternative posting orders to reliably measure the damages [Swift] suffered as a result of overdraft fees BancorpSouth Bank assessed based on the high-to-low posting order it used to post all Debit Card Transactions initiated by [Swift]." (*See* McFarlane Expert Report, Sep. 24, 2012, at 1.) In rebuttal, BancorpSouth may call its banking industry expert, Paul Carrubba. BancorpSouth also anticipates that Swift will rely on testimony from his damages calculations expert, Arthur Olsen, to calculate the damages based on the alternative posting order methodologies proposed by Mr. McFarlane.

- <u>Result</u>: The jury will decide Swift's individual damages, if any.

**Phase 3: Class Damages.**

- <u>Stipulated Facts and Documents</u>: BancorpSouth anticipates that Swift will rely on the aggregate transaction history for the class members obtained during discovery.

- <u>Lay Testimony</u>: None. BancorpSouth anticipates that the parties will stipulate to the authenticity of the aggregate transaction history.

- <u>Expert Testimony</u>: BancorpSouth anticipates that Swift will rely on testimony from his damages calculations expert, Arthur Olsen. (*See* Swift's Trial Plan, MDL Doc. 2272 at 2.) To the extent that the jury chooses an alternative posting order in Phase 2, BancorpSouth anticipates that Mr. Olsen will testify as to how he calculated the damages based on that alternative posting order. For rebuttal, BancorpSouth may call its damages calculation expert, Steven Visser. To the extent that the jury chooses a method of damages calculation other than an alternative posting order, Mr. Olsen's testimony may not be necessary.

<u>Result</u>: There are no questions of fact in this phase; a jury will not be necessary. The Court will determine class damages based on the jury's decision in Phase 2.

Each phase is dependent on a decision from the prior phase. Phases 2 is dependent on a finding of liability. Phase 3 is dependent on a finding of Swift's individual damages. Because each phase will result in a decision necessary for the next phase, the phased trial will streamline the jury's decision-making. *See Bayou Fleet*, 2013 U.S. Dist. LEXIS 5297 at *6 (approving of "a single proceeding but divided the trial into separate phases, whereby the jury first determined liability, and if the defendant was found liable, a trial on the issue of damages was then presented to the same jury."); *Daniels v. Loizzo*, 178 F.R.D. 46, 47 (S.D.N.Y. 1998) ("Judicial efficiency is served where a separate trial disposes of one claim or establishes a necessary element of a second claim."). Separate phases for liability, individual damages, and class damages is especially important in a case like this, where (a) the scope of the class is unknown before a liability determination

is made, and (b) the measure of damages cannot be calculated until a liability determination.[20]

### 3. The importance of phases in this case.

This is an unusual class action. In fact, the members of the class itself have not yet been identified—the class definition is dependent on the claims to be tried and any damages finding. As discussed above, Swift's class is a class in the alternative: if the account agreement is found to be void, then the unconscionability, unjust enrichment, and ADTPA claims go forward; but the good faith and fair dealing claim, which is predicated on a valid account agreement, cannot go forward. (*See, e.g.*, Summary Judgment Order, MDL Doc. 3682 at 21.) If the Court accepts unconscionability, all the class members may proceed with their claims.

However, if the Court determines that the account agreement is a valid contract, then the good faith and fair dealing and ADTPA claims go forward; but the unconscionability and unjust enrichment claims, which are predicated on voiding the account agreement, cannot go forward. In latter eventuality, the class members located in Louisiana, Missouri, and Texas cannot obtain any relief at all as members of the class. Thus, the Court's decision on unconscionability has this second important role in managing trial because it determines the total size of the class.

_____

[20] Federal courts around the country have ordered phased trials where liability must be resolved before damages. *See, e.g., Hines v. Joy Mfg. Co.*, 850 F.2d 1146, 1152 (6th Cir. 1988) ("Bifurcation of issues of liability from those relating to damages is an obvious application of Rule 42(b). Logically, liability must be resolved before damages may be considered."); *Bayou Fleet*, 2013 U.S. Dist. LEXIS 5297 at *5 ("[B]ecause factual issues of liability had to be determined before raising the issue of damages to the jury, holding trial on both issues simultaneously was 'potentially confusing and prejudicial.'").

Beyond that, the class membership and measure of damages also is predicated on the type of damages determination a jury may make. Swift's damages **theory** is based entirely on the difference between BancorpSouth's actual posting order and a not-yet-determined alternative posting order. (*See, e.g.*, Swift's Opposition to Motion to Decertify Class, MDL Doc. 3498 at 6 ("[T]he jury will be charged with identifying the alternative posting order on which to base its verdict for Plaintiffs and the class at trial.").) Swift proposes that the jury choose an alternative posting order that BancorpSouth should have used instead of the actual posting order—but the jury does not have to accept this argument. Unless and until the jury determines an alternative posting order (or some other damages methodology), all damages calculations are speculative. Thus, Swift cannot match his damages model to his liability theory until liability has been established. A jury, furthermore, first must find that BancorpSouth acted wrongfully before it can determine how BancorpSouth should have acted instead.[21]

Swift will seek to have the jury decide all issues of class-wide liability and class-wide damages at the same time, even though one is dependent on the other. This is a recipe for confusion and prejudice. *See Bayou Fleet*, 2013 U.S. Dist. LEXIS 5297 at *5 ("[B]ecause factual issues of liability had to be determined before raising the issue of damages to the jury, holding trial on both issues simultaneously was 'potentially

---

[21] Because the scope of the class itself and the measure of damages both are predicated on the liability and damages determination, prejudice would result if Swift presented evidence of class damages to the jury before a class and a method to calculate damages were established. Before those determinations are made, any attempt to show class damages would be speculative, confusing, and unduly prejudicial. BancorpSouth anticipates filing a motion in limine on this issue depending on this Court's decision regarding phased trials.

confusing and prejudicial.'"); *Tanner v. Entergy Ark.*, No. 4:08-CV-00099-BSM, 2009 U.S. Dist. LEXIS 53588, *7 (E.D. Ark. June 8, 2009) ("The court finds that the jury would likely be unnecessarily confused by conducting what amounts to three mini-trials at one time."). A phased trial, instead, focuses the jury on discrete tasks supporting by discrete evidence: first, decide if BancorpSouth's conduct satisfies the elements of the claims presented to the jury. Second, decide, if the jury finds Swift was damaged, what the measure of damages should be. *See Ciena Corp. v. Corvis Corp.*, 210 F.R.D. 519, 521 (D. Del. 2002) ("To this end, the Court will separate the issues for trial in this case in a way that reduces the number of legal principles the jury must consider and apply."). After the jury has made these discrete decisions, the Court may decide how to apply the jury's decisions to the class.[22]

Finally, a phased trial will streamline shorten the trial. *See Morton v. Otis Elevator Co.*, No. 07-CV-00469-M, 2012 U.S. Dist. LEXIS 4801, *4 (W.D.N.Y. Jan. 17, 2012) ("The potential for saving the parties' and court's time in the event of a defense verdict on liability is a significant consideration."); *Daniels v. Loizzo*, 178 F.R.D. 46, 49

---

[22] BancorpSouth anticipates very little overlap in evidence among the phases. But, even if some testimony or documentary evidence overlapped between phases, a phased trial still would be appropriate. *See Angelo v. Armstrong World Indus.*, 11 F.3d 957, 965 (10th Cir. 1993) (affirming bifurcation because, "[a]lthough the same witnesses may testify in both phases, the issues and testimony are different."); *Morton v. Otis Elevator Co.*, No. 07-CV-00469-M, 2012 U.S. Dist. LEXIS 4801, *4 (W.D.N.Y. Jan. 17, 2012) (ordering bifurcation even though the plaintiff overlapped as a liability and damages witness). Indeed, even assuming some overlapping evidence, there will be no need to redevelop that evidence in a later phase because the same jury will be used. *Id.* at *5 ("As the **same jury** will be used to try both the liability and damage phases of the action, there will be **no need to have duplicative testimony**, and there will be little sacrifice to efficiency, convenience or judicial economy") (emphasis added).

(S.D.N.Y. 1998) ("Because a second trial may be unnecessary, the parties and the Court may benefit from a bifurcated trial process."). The jury will be able to focus on the relevant evidence for its decision and do its job efficiently and quickly without extraneous evidence, confusing and inconsistent case theories, or prejudice to the parties.

BancorpSouth's proposed phased trial streamlines the issues for trial and clarifies the order and structure of the trial. BancorpSouth is happy to explore the exact contours of the phases with the Court and opposing counsel to ensure a structured, streamlined trial with minimal jury confusion or prejudice to the parties.

**D.     The Court should clarify inconsistencies created by rulings on Swift's motion in limine, both parties' *Daubert* motions, and summary judgment.**

1.     <u>The Court prematurely ruled on several evidentiary issues</u>.

Eight months before its summary judgment ruling, the MDL Court entered an order granting a motion in limine filed by Swift. (MDL Doc. 3258, the "Motion in Limine Order.") In the Motion in Limine Order, the MDL Court ruled the following categories of evidence inadmissible:  (1) "Evidence of Plaintiff's Alternative Sources of Payment;" (2) "Evidence of Plaintiff's Purpose of, and Use of Funds that resulted in Overdraft Fees;" (3) "References to Interpretive Letters by the Office of the Comptroller of the Currency and Statements in the Office of the Comptroller of the Currency's Website;" (4) "Evidence that BancorpSouth's Posting Practices are Common in the Banking Industry and are Used by BancorpSouth's Competitors;" and (5) "Evidence of the 'Benefits' of Permitting Overdrafts." (Motion in Limine Order at 2.) This Order did not contain any analysis, and simply declared for each category of evidence that "[t]he Court finds that this information is irrelevant."

Many of these categories of evidence will be relevant to the claims presented by Swift and the defenses presented by BancorpSouth. For example, the MDL Court ruled that "Evidence that BancorpSouth's Posting Practices are Common in the Banking Industry and are Used by BancorpSouth's Competitors" is inadmissible. But Swift is pursuing claims where this evidence would be relevant. With respect to the good faith and fair dealing claim, for instance, other banks' practices bear on BancorpSouth's intent and whether its posting practice was objectively reasonable under prevailing industry standards. *See Autry Petroleum Co. v. BP Products North America, Inc.*, 334 F. App'x 982, 985 (11th Cir. 2009) ("Good faith includes observance of reasonable commercial standards . . . in the trade"). In addition, both Arkansas case law and the Arkansas Model Jury Instructions make clear that the allegedly improper conduct for an ADTPA claim "must be considered in light of trade practices." *Independence County v. Pfizer, Inc.*, 534 F. Supp. 2d 882, 887–88 (E.D. Ark. 2008), *aff'd*, 552 F.3d 659 (8th Cir. 2009); Arkansas Model Jury Instructions (Civil), AMI 2900 Issues—Claim for Damages Based on Deceptive Trade Practices (Dec. 2013) ("Both the preamble to the [ADTPA] and the activities that the [ADTPA] makes unlawful show that the application of the [ADTPA] is limited to trade practices and that 'unconscionable' conduct prohibited by the [ADTPA] must be considered in light of trade practices.").[23] Thus, banking industry practices are relevant to the claims brought by Swift.

---

[23] A copy of the Arkansas Model Jury Instructions for a ADTPA claim is attached hereto as <u>Exhibit E</u>.

Instead of ruling on the admissibility of the categories of evidence now, out of context, BancorpSouth proposes that the Court reserve ruling until the appropriate context for the categories of evidence arises during trial. *See, e.g.*, *Stewart v. Hooters of America, Inc.*, No. 8:04-CV-40-T-17-MAP, 2007 WL 1752843, at *1 (M.D. Fla. June 18, 2007) ("[A]dmissibility questions should be ruled upon as they arise at trial."). With this approach, the Court may determine whether the evidence will be relevant or not within the proper context at trial.[24]

> 2. The MDL Court's Motion in Limine Order contradicted its earlier *Daubert* Order.

The Motion in Limine Order stands in stark contrast to the MDL Court's *Daubert* Order entered just ten days earlier. (*Compare* MDL Doc. 3229 *with* MDL Doc. 3258.) In the *Daubert* Order, the MDL Court denied Swift's *Daubert* challenge against two of BancorpSouth's proffered experts, Paul Carrubba and Michael Barone. (MDL Doc. 3229 at 2.) The Court emphasized that it "finds no cause to exclude their testimony at this time. Instead, parties may object to such testimony as appropriate during trial." (*Id.*)

Although the *Daubert* Order allowed the expert testimony to be presented and evaluated for relevancy at trial, the Motion in Limine Order appeared to reverse course and exclude certain topics on which BancorpSouth's experts are expected to opine. (MDL Doc. 3258 at 1–2.) In the same order, however, the MDL Court went on to apparently

---

[24] Even the MDL Court appeared to have second thoughts about its premature evidentiary rulings when, at the summary judgment motions hearing seven months later, the MDL Court said "I'm afraid about carving out chunks of the trial and tying the hands on the presiding Judge on what is admissible from an evidentiary standpoint." (MDL Doc. 3663 at 25:6–9.)

contradict itself by ordering that "any issues related to expert testimony, as well as any other evidentiary issues, may be further considered at the final pre-trial conference." (*Id.* at 2.) In other words, the MDL Court opened the door on the expected expert testimony, then shut the door, then opened the door back up.

BancorpSouth requests that the Court clarify these issues and rule on them at or just before trial in the proper context.

       3.      <u>It is likely the parties will need to file further motions in limine</u>.

The pretrial conference set for September 4, 2014 and the Court's decisions on the issues in this memorandum, including which of Swift's claims may go forward and whether the trial will be conducted in phases. As will the parties' continuing efforts to meet and confer to resolve outstanding issues. Thus, after the Court has ruled on the issues presented in this memorandum and Swift's memorandum, it is likely that the parties will need to file further motions in limine. Accordingly, BancorpSouth requests that the Court allow motions in limine to be filed after the Court's decision on these issues that establish the contours of the trial.

### III.    CONCLUSION

The Court should decide which alternative case theory Swift may present to the jury, whether an independent breach of contract claim may proceed, whether the trial should be conducted in phases, and evidentiary issues. A decision on these issues will streamline and focus the trial, while preventing prejudice to the parties.

Respectfully submitted this 25th day of June, 2014.

**PARKER, HUDSON, RAINER & DOBBS LLP**

<u>*/s/ Eric Jon Taylor*</u>

Eric Jon Taylor                         1500 Marquis Two Tower

Georgia Bar No. 699966           285 Peachtree Center Avenue, N.E.

David B. Darden                       Atlanta, Georgia 30303

Georgia Bar No.  250341          Telephone: 404-523-5300

Darren E. Gaynor                    Facsimile: 404-522-8409

Georgia Bar No. 288210           E-mail: ejt@phrd.com

Peter F. Busscher                   E-mail: dbd@phrd.com

Georgia Bar No. 407228           E-mail: deg@phrd.com

                                       E-mail: pfb@phrd.com

*Counsel for BancorpSouth Bank*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this day caused the foregoing **BANCORPSOUTH'S INITIAL MEMORANDUM REGARDING PRETRIAL ISSUES** to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel who have appeared and are entitled to receive service.

This 25th day of June, 2014.

/s/ *Eric Jon Taylor*
Eric Jon Taylor