**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION**

**Case No. 1:10-cv-00090-GRJ**

**SHANE SWIFT, on Behalf of
Himself and All Others Similarly
Situated,**

> **Plaintiff,**

> **vs.**

**BANCORPSOUTH BANK,**

> **Defendant.**

**ORDER OF FINAL APPROVAL OF CLASS SETTLEMENT,
AUTHORIZING SERVICE AWARD, AND GRANTING APPLICATION
FOR ATTORNEYS' FEES AND EXPENSES**

Pending before the Court is Plaintiff's And Class Counsel's Corrected

Motion for Final Approval of Class Settlement, and Application for Service

Award, Attorneys' Fees and Expenses, and Incorporated Memorandum of

Law (the "Motion"), seeking Final Approval of the Settlement Agreement

and Release ("Agreement" or "Settlement") with BancorpSouth Bank

("BancorpSouth").[1]  [ECF No. 94].  Plaintiff and Class Counsel also filed

declarations supplementing the record to enable the Court to evaluate the

---

[1] This Order incorporates the definitions of terms used in the Agreement attached to the
Motion [ECF No. 94-1].

fairness, reasonableness and adequacy of the Settlement, and the applications for Service Award and attorneys' fees and expenses. [ECF Nos. 94-2, 94-3, 94-4, 94-5, 94-6, 100].

On July 14, 2016 the Court held a hearing pursuant to the Court's Preliminary Approval Order dated March 8, 2014, the Magistrate Judge referral and Notice of Hearing dated June 13, 2016, the Notice, Consent, and Reference of a Civil Action to a Magistrate Judge dated June 20, 2016, and the Order dated June 20, 2016 referring this matter to the undersigned to conduct any and all proceedings in this Action, including entry of final judgment pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. [ECF Nos. 90, 96, 97, 98, 99]. The Court has reviewed all of the filings pertaining to the Settlement, other relevant portions of the record, and heard presentations on the Motion. The Motion is unopposed. Without admitting wrongdoing or liability for the claims vigorously litigated in the Action, BancorpSouth supports approval of the Settlement and does not oppose Class Counsel's application for a Service Award, attorneys' fees and expenses. No timely opposition or objections to the Motion from any members of the Settlement Class were filed and no objectors appeared at the hearing.

After careful consideration of the Motion and presentations at the

hearing, the undersigned finds and concludes that the Settlement provides a fair, reasonable and adequate recovery for Settlement Class Members, representing approximately fifty-seven percent (57%) of the maximum possible recoverable damages based on the creation of a $24,000,000 Settlement Fund, and therefore constitutes a satisfactory compromise of Settlement Class Members' claims.  In addition to the Settlement Fund, BancorpSouth agreed to pay up to $500,000 for fees and costs incurred in connection with the Notice Program and administration of the Settlement, further increasing the recovery under the Settlement.  As the Court expressed at the hearing the Court finds that the Settlement is fair, reasonable and adequate, and constitutes an excellent result for the Settlement Class under the circumstances and challenges presented by the Action.  The undersigned specifically finds and concludes that the Settlement fully complies with Fed. R. Civ. P. 23(e), and, thus, the Court grants Final Approval to the Settlement, finally certifies the Settlement Class, awards the requested Service Award to the representative Plaintiff, and awards attorneys' fees and expenses to Class Counsel.  Accordingly, the undersigned enters this Final Approval Order and the accompanying Final Judgment.

## BACKGROUND

This consumer class action was commenced against BancorpSouth in 2010.  Class Counsel and BancorpSouth's counsel vigorously litigated the Action for more than five years up to the time of the Settlement.  The Settlement is clearly the result of arm's-length negotiations, and the undersigned so finds.

The evidentiary record is more than adequate for the Court to consider the fairness, reasonableness and adequacy of the Settlement.  A fundamental question is whether the Court has sufficient facts before it to evaluate and intelligently and knowledgeably approve or disapprove the settlement.  *In re General Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1084 n.6 (6th Cir. 1984) (citing *Detroit v. Grinnell*, 495 F.2d 448, 463-68 (2d Cir. 1974)).  In this case, the Court has such facts before it in considering the Motion, including the evidence and opinions of Settlement Class Counsel and others [ECF Nos. 94-2, 94-3, 94-4, 94-5, 94-6].

### 1.    Factual and Procedural Background of the Action.

On May 18, 2010, Plaintiff Shane Swift initiated this litigation against BancorpSouth in this Court ("*Swift*"), alleging improper assessment and collection of Overdraft Fees and seeking, *inter alia,* monetary damages, interest, attorneys' fees, restitution, and equitable relief.  Joint Declaration

of Bruce S. Rogow, Robert C. Gilbert, and Jeffrey M. Ostrow ¶ 9 ("Joint Decl.") [ECF No. 94-2].  In October 2010, the Judicial Panel on Multidistrict Litigation ("JPML") transferred *Swift* to the United States District Court for the Southern District of Florida, where it joined other actions coordinated under the MDL caption *In Re: Checking Account Overdraft Litigation*, Case No. 1:09-md-02036-JLK ("MDL 2036").

In December 2010, Plaintiff Swift filed a Second Amended Complaint, alleging unfair assessment and collection of Overdraft Fees and seeking monetary damages, restitution, interest, attorneys' fees, and equitable relief from BancorpSouth.  [S.D. Fla. DE #994].  BancorpSouth filed a Motion to Dismiss the Second Amended Complaint [S.D. Fla. ECF No.1068]. Following briefing and oral argument, the MDL 2036 Court denied BancorpSouth's motion on March 21, 2011.  [S.D. Fla. ECF No.1305], reported at *In re Checking Account Overdraft Litig.*, No. 09-2036, 2011 U.S. Dist. LEXIS 30965 (S.D. Fla. Mar. 21, 2011).

In April 2011, BancorpSouth filed an Answer and Affirmative Defenses, to which Plaintiff responded with a motion to strike a number of BancorpSouth's affirmative defenses as legally insufficient.  [S.D. Fla. ECF No. 1335, 1390].  Prior to a ruling on that motion, the MDL 2036 Court approved the Parties' stipulation, and BancorpSouth filed an Amended

Answer and Affirmative Defenses, denying any and all wrongdoing and liability whatsoever and asserting, *inter alia*, that its actions complied with all applicable laws and regulations, and raising various affirmative defenses.  [S.D. Fla. ECF No. 1693].  Accordingly, the operative pleadings in *Swift* are Plaintiff's Second Amended Complaint [S.D. Fla. ECF No. 994] and BancorpSouth's Amended Answer and Affirmative Defenses [S.D. Fla. ECF No.1693].

Discovery commenced in May 2011.  During the course of fact and expert discovery, Class Counsel conducted approximately fourteen depositions of BancorpSouth fact and expert witnesses, and BancorpSouth conducted five depositions of Plaintiff's fact and expert witnesses.  Joint Decl. ¶ 16.  BancorpSouth also produced approximately 100,000 pages of documents, as well as voluminous electronic data files and spreadsheets produced in native format.  *Id.* at ¶ 17.

In July 2011, Class Counsel and counsel for BancorpSouth (and certain other bank-defendants in MDL 2036) entered into a Stipulated Protective Order relating to the production of documents and information. [S.D. Fla. ECF No.1774].  Class Counsel and BancorpSouth also entered into a Stipulated Discovery Plan for Electronically Stored Information, which

the MDL 2036 Court adopted on October 11, 2011.  [S.D. Fla. ECF No. 1968].

In December 2011, Plaintiff filed a Motion for Class Certification. [S.D. Fla. ECF No. 2271].  In February 2012, BancorpSouth filed its Opposition to Plaintiff's Motion for Class Certification [S.D. Fla. ECF No. 2446], and Plaintiff filed its Reply in Support of Motion for Class Certification in March 2012 [S.D. Fla. ECF No. 2576].

On May 4, 2012, the MDL 2036 Court entered an Opinion and Order Granting Class Certification. [S.D. Fla. ECF No. 2673].  BancorpSouth filed a Petition for Permission to Appeal the Order Granting Class Certification Pursuant to Federal Rule of Civil Procedure 23(f).  *See* 11th Cir. Case No. 12-90024-E.  On February 13, 2013, following briefing, the Eleventh Circuit Court of Appeals denied the petition. [S.D. Fla. ECF No. 3294].

In February 2013, the MDL 2036 Court approved the implementation of the class notice plan to the certified class. [S.D. Fla. ECF Nos. 3242, 3338, 3342].  Pursuant to that Order, notice was mailed to all members of the certified class for whom reasonably reliable mailing addresses were available; 238 class members timely exercised their right to opt out of the certified class. [S.D. Fla. ECF No. 3589].

In May 2013, BancorpSouth moved to decertify the class. [S.D. Fla. ECF No. 3455].  Following briefing, the MDL 2036 Court denied BancorpSouth's motion to decertify.  [S.D. Fla. ECF No. 3540]. BancorpSouth filed a second Petition for Permission to Appeal the Order Denying the Motion to Decertify Pursuant to Federal Rule of Civil Procedure 23(f), which the Eleventh Circuit Court of Appeals denied. *See* 11th Cir. Case No. 13-90019-E.

Following class certification, the MDL 2036 Court directed the Parties to file all pretrial motions by certain deadlines.  [S.D. Fla. ECF Nos. 2834, 2891].  Pursuant to the operative Scheduling Order, the Parties filed a number of pretrial motions that were decided by the MDL 2036 Court following briefing and, in some instances, oral argument, including: Plaintiff's Motion for Partial Summary Judgment was granted in part and denied in part [S.D. Fla. ECF Nos. 2997, 3035, 3116, 3655, 3682]; Plaintiff's Motion in Limine to preclude BancorpSouth from offering certain evidence at trial was granted  [S.D. Fla. ECF Nos. 2996, 3258]; Plaintiff's Motion to Strike two of BancorpSouth's designated expert witnesses was denied [S.D. Fla. ECF Nos. 3014, 3229]; BancorpSouth's Motion for Summary Judgment was denied in its entirety [S.D. Fla. ECF Nos. 2999,

3682]; and BancorpSouth's Motion to Strike two of Plaintiff's designated expert witnesses was denied [S.D. Fla. ECF Nos. 3014, 3229].

Upon the conclusion of three years of extensive pretrial proceedings, the MDL 2036 Court entered a Suggestion of Remand. [S.D. Fla. ECF Nos. 3683, 3707].  Thereafter, in December 2013, the JPML remanded the Action to this Court. [ECF Nos. 25, 26].

Following remand, BancorpSouth filed a Renewed Motion to Transfer Venue to the Eastern District of Arkansas, pursuant to 28 U.S.C. § 1404(a). [ECF Nos. 29, 33].  On June 4, 2014, following briefing and oral argument, this Court denied BancorpSouth's Renewed Motion to Transfer Venue. [ECF No. 48].

On June 5, 2014, this Court entered an Order for Pre-Trial Conference and Setting Trial, which directed the Parties to file a series of memoranda and a Joint Pretrial Stipulation in advance of a Pretrial Conference scheduled for September 11, 2014. [ECF No. 49].  As required by that Order, the Parties filed a series of memoranda addressing various pretrial issues. [ECF Nos. 54, 55, 56, 57, 60, 61].  The Parties also filed a Joint Pretrial Stipulation, along with their respective witnesses and exhibit lists, proposed jury instructions and verdict forms, and proposed findings of fact and conclusions of law. [ECF Nos. 63, 64, 65, 66].  On September 11,

2014, this Court conducted a Pretrial Conference, during which it heard argument regarding various issues addressed in the Parties' memoranda. [ECF No. 69].

On August 27, 2015, this Court entered an order denying BancorpSouth's request for reconsideration of certain pretrial rulings decided by the MDL 2036 Court prior to remand.  [ECF No. 77].  That order also directed the Parties to engage in another round of mediation prior to October 30, 2015.  *Id.*

### 2.    Settlement Negotiations and Proceedings.

In 2012, the Parties participated in their first mediation conference under the auspices of Professor Eric Green of Resolutions, LLC.  The first mediation ended in an impasse, and the Parties continued their active litigation for three more years.  Joint Decl. ¶ 31.

Pursuant to the Court's August 2015 Order [ECF No. 77], on October 28, 2015, Parties participated in their second mediation conference under the auspices of Jonathan B. Marks of MarksADR, LLC.  Joint Decl. ¶ 32. Although an agreement to settle was not reached during that mediation conference, the Parties agreed that Mr. Marks would continue his mediation efforts thereafter.  Throughout November and early December 2015, Mr. Marks conducted a series of mediation communications with both

sides in an effort to assist the Parties in reaching an agreement in principle. *Id.*

On December 4, 2015, as a result of the continued mediation efforts by Mr. Marks, the Parties reached an agreement in principle to resolve the Action.  Joint Decl. ¶ 33.  On January 5, 2016, following further negotiations and discussions, the Parties executed a Summary Agreement that memorialized their binding and enforceable agreement to settle the Action. *Id.*  Further discussions and negotiations over the detailed terms and conditions to be included in the comprehensive Settlement Agreement and Release and related documents took place in January and February 2016. The Parties ultimately resolved all remaining issues and completed the detailed process of drafting the Settlement Agreement and Release and related documents, which was executed in February 2016.  *Id.*

On February 24, 2016, Plaintiff and Class Counsel filed their Unopposed Motion for Preliminary Approval of Class Settlement and for Certification of Settlement Class.  [ECF No. 89].  On March 8, 2016, this Court entered the Order Preliminarily Approving Settlement and Certifying Settlement Class.  [ECF No. 90].  The Preliminary Approval authorized and directed Notice to the Settlement Class, and established a series of deadlines preceding the Final Approval Hearing.  Joint Decl. ¶ 34.

11

On May 12, 2016, Plaintiff and Class Counsel filed the Motion. [ECF No. 94].  Plaintiff and Class Counsel also filed declarations supplementing the record to enable the Court to evaluate the fairness, reasonableness and adequacy of the Settlement, the application for a Service Award, and the application for attorneys' fees and expenses.  [ECF Nos. 94-2, 94-3, 94-4, 94-5, 94-6].

On June 23, 2016, Plaintiff and Class Counsel filed a Supplemental Declaration of Cameron R. Azari, the Notice Administrator, attesting that a total of 19 Settlement Class Members timely and properly excluded themselves from the Settlement (in addition to the 238 who previously excluded themselves from the certified class and were not included in the Settlement Class), and confirming that no timely objections to the Settlement were received.  [ECF No. 100].

### 3. Summary of the Settlement Terms.

The terms of the Settlement are set forth in the Agreement.  [ECF No. 94-1].  A summary of the material terms of the settlement includes the following.

### A. The Settlement Class.

The Settlement Class is an opt-out class under Rule 23(b)(3) of the Federal Rule of Civil Procedure.  The Settlement Class is defined as:

All Account Holders of a BancorpSouth Account who, during the Class Period applicable to the state in which the Account was opened, incurred one or more Overdraft Fees as a result of BancorpSouth's High-to-Low Posting.[2] Excluded from the Class are all current BancorpSouth officers and directors, and the judge presiding over this Action.

Agreement ¶ 64.[3]

### B.    Monetary Relief for the Benefit of the Class.

The Settlement required BancorpSouth to deposit $24,000,000.00 into the Escrow Account following entry of the Preliminary Approval Order. Agreement ¶ 87.  The Bank deposited that sum, creating the Settlement Fund.  Joint Decl. ¶ 35.

The Settlement Fund will be used to: (i) pay all Automatic Distributions of payments to the Settlement Class; (ii) pay all Court-ordered awards of attorneys' fees, costs and expenses of Class Counsel; (iii) pay

---

[2] The Settlement Class consists solely of the 190,953 identifiable current and former BancorpSouth Account Holders identified based on the analysis set forth in the Expert Report of Arthur Olsen dated November 8, 2012, as supplemented by the Supplemental Expert Report of Arthur Olsen dated August 28, 2014, excluding the 238 class members who previously exercised their right to opt out of the certified class. [S.D. Fla. ECF No. 3589].

[3] "Class Period" means: (a) for Settlement Class Members who opened accounts in Louisiana, the period from May 18, 2003 through August 13, 2010; (b) for Settlement Class Members who opened accounts in Alabama or Tennessee, the period from May 18, 2004 through August 13, 2010; (c) for Settlement Class Members who opened accounts in Arkansas, the period from May 18, 2005 through August 13, 2010; (d) for Settlement Class Members who opened accounts in Florida or Texas, the period from May 18, 2006 through August 13, 2010; and (e) for Settlement Class Members who opened accounts in Mississippi or Missouri, the period from May 18, 2007 through August 13, 2010.  Agreement ¶ 32.

the Court-ordered Service Award to the Plaintiff; (iv) distribute any residual funds as set forth in paragraph 104 of the Agreement; (v) pay all Taxes pursuant to paragraph 89 of the Agreement; (vi) pay any costs of the Notice Administrator and Settlement Administration exceeding the $500,000 to be paid by BancorpSouth pursuant to paragraph 67 of the Agreement; and (vii) pay any additional fees, costs and expenses not specifically enumerated in paragraph 90 of the Agreement, subject to approval of Settlement Class Counsel and BancorpSouth.  Agreement ¶ 90.  In addition to the Settlement Fund, BancorpSouth deposited $500,000 into the Escrow Account to pay for costs and fees of the Settlement Administrator and Notice Administrator incurred in connection with the administration of the Notice Program and Settlement administration, for which it is responsible under the Settlement.  *Id.* at ¶ 67.

All identifiable Settlement Class Members who experienced a Differential Overdraft Fee will receive pro rata distributions from the Net Settlement Fund, provided they did not opt-out of the Settlement.[4]

---

[4] The Net Settlement Fund is equal to the Settlement Fund, plus interest earned (if any), less the amount of Court-awarded attorneys' fees and costs to Class Counsel, the amount of Court-awarded Service Award to the Plaintiff, a reservation of a reasonable amount of funds for prospective costs of Settlement administration that are not BancorpSouth's responsibility pursuant to paragraph 67 of the Agreement, and any other costs and/or expenses incurred in connection with the Settlement that are not specifically enumerated in paragraph 67 that are provided for in the Agreement and are approved by Settlement Class Counsel and BancorpSouth.  Agreement ¶ 96.

Agreement Section XII.  The Differential Overdraft Fee analysis

determined, among other things, which BancorpSouth Account holders

were assessed additional Overdraft Fees that would not have been

assessed if the Bank had used a chronological posting sequence or

method for posting Debit Card Transactions instead of High-to-Low

Posting, and how much in additional Overdraft Fees those Account holders

paid as a result.  The calculation involved a multi-step process that is

described in detail in the Agreement.  *Id.* at ¶ 93.

Eligible Settlement Class Members do not have to submit claims or

take any other affirmative step to receive relief under the Settlement.  The

amount of their Differential Overdraft Fees was determined by Class

Counsel's expert through a detailed analysis of BancorpSouth's electronic

data.  Agreement Section XI.  As soon as practicable after Final Approval,

but no later than 60 days from the Effective Date (Agreement ¶ 95), the

Settlement Administrator will calculate and distribute the Net Settlement

Fund, on a *pro rata* basis, to all Settlement Class Members who had a

Differential Overdraft Fee and did not timely opt-out of the previously

certified class or the Settlement.  Agreement Section XII.

Payments to Settlement Class Members who are Current Account

Holders will be made by crediting their Accounts, and notifying them of the

credit.  Agreement ¶ 100.  BancorpSouth will be entitled to a reimbursement for such credits from the Net Settlement Fund.  *Id.* at ¶ 101. Past Account Holders (and any Current Account Holders whose Accounts cannot feasibly be automatically credited) will receive their payments by checks mailed by the Settlement Administrator.  *Id.* at ¶ 102.

Any uncashed or returned checks will remain in the Settlement Fund for one year from the date the first distribution check is mailed, during which time the Settlement Administrator will make reasonable efforts to effectuate delivery of the Settlement Fund Payments.  Agreement ¶ 103. Any residual funds remaining in the Settlement Fund one year after the first Settlement Fund Payments are mailed will be distributed pursuant to Section XIII of the Agreement.  *Id.* at ¶ 104.

### C.   Class Release.

In exchange for the benefits conferred by the Settlement, all Settlement Class Members who have not opted-out (and Releasing Parties as defined in the Settlement Agreement) will be deemed to have released BancorpSouth from claims related to the subject matter of the Action.  The detailed release language is found in Section XIV of the Agreement. Agreement ¶¶ 105-107. This Order does not modify the scope of Section XIV of the Settlement.

16

## DISCUSSION

Federal courts have long recognized a strong policy and presumption in favor of class action settlements.  The Rule 23(e) analysis should be "informed by the strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement." *Bennett v. Behring Corp.,* 737 F.2d 982, 986 (11th Cir. 1984).  In evaluating a proposed class action settlement, the Court "will not substitute its business judgment for that of the parties; 'the only question . . . is whether the settlement, taken as a whole, is so unfair on its face as to preclude judicial approval.'" *Rankin v. Rots*, 2006 WL 1876538, at *3 (E.D. Mich. June 27, 2006) (quoting *Zerkle v. Cleveland-Cliffs Iron Co.*, 52 F.R.D. 151, 159 (S.D.N.Y. 1971)).  "Settlement agreements are highly favored in the law and will be upheld whenever possible because they are a means of amicably resolving doubts and uncertainties and preventing lawsuits." *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1105 (5th Cir. 1977).

As explained below, the undersigned finds and concludes that the Settlement here is more than sufficient under Rule 23(e).  It includes a Settlement Fund of $24,000,000, plus BancorpSouth's payment of $500,000 of the fees and costs of the Notice Program and Settlement administration.  Agreement ¶¶ 66, 67, 87.  All Settlement Class Members

17

who experienced a Differential Overdraft Fee and did not timely opt-out will

automatically receive their *pro rata* share of the Net Settlement Fund as a

matter of course, without needing to take any action, based on an analysis

of BancorpSouth's data by Class Counsel's expert.  *Id.* at ¶ 95.

## 1.    The Court's Exercise of Jurisdiction Is Proper.

In addition to having personal jurisdiction over the Plaintiff and the

certified class, who are parties to the Action, the Court has personal

jurisdiction over all members of the Settlement Class because they

received the requisite notice and due process.  *See Phillips Petroleum Co.*

*v. Shutts*, 472 U.S. 797, 811-12 (1985) (citing *Mullane v. Cent. Hanover*

*Bank & Trust Co.*, 339 U.S. 306, 314-15 (1950)); *see also In re Prudential*

*Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283, 306 (3d Cir. 1998).

The Court has subject matter jurisdiction over the Action pursuant to 28

U.S.C. §§ 1332(d)(2) and (6).

## a.    The Best Notice Practicable Was Provided to the Settlement Class.

Pursuant to the Agreement (Section VIII) and the Preliminary

Approval Order [ECF No. 90], Notice of the Settlement was provided to

apprise the Settlement Class of the pendency of the Action, the terms of

the Settlement, Class Counsel's application for an award of attorneys' fees

and expenses, and request for Service Award, and their rights to opt-out of or object to the Settlement.  Specifically, Notice of the Settlement in the forms approved by the Court was mailed to 190,541 members of the Settlement Class.  *See* Declaration of Cameron Azari ¶¶ 14-28 ("Azari Decl.") [ECF No. 94-4].  Notice of the Settlement was also published in sixteen (16) of the highest daily circulation newspapers and/or newspapers that were more likely to be read by Settlement Class Members in the geographic markets where BancorpSouth maintained branches during the Class Period.  *Id.* at ¶¶ 21-25.  In addition, a special Settlement Website and toll-free telephone number were established to enable Settlement Class Members to obtain detailed information about the Action and the Settlement.  *Id.* at ¶¶ 26-28.

      **b.**    **The Notice Was Reasonably Calculated to Inform Settlement Class Members of Their Rights.**

The Court-approved Notice[5] satisfied due process requirements because it described "the substantive claims . . . [and] contained information reasonably necessary to make a decision to remain a class member and be bound by the final judgment."  *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d at 1104-05.  The Notice, among other things,

---

[5] *See* Preliminary Approval Order at ¶ 12.  [ECF No. 90].

defined the Settlement Class; described the release provided to BancorpSouth under the Settlement, as well as the amount, manner of allocating, and proposed distribution of the Settlement proceeds; and informed Settlement Class Members of their right to opt-out or object, the procedures for doing so, and the time and place of the Final Approval Hearing.  Azari Decl.  ¶¶ 8-39 and Attachments 2-5.  Further, the Notice stated that Class Counsel intended to apply for attorneys' fees of up to thirty-five percent (35%) of the $24,000,000 Settlement Fund.  In addition to disclosing these material terms, the Notice informed Settlement Class Members that a class judgment would bind them unless they timely excluded themselves, and advised them where they could get more information – for example, at the Settlement Website that posts a copy of the fully executed Agreement, as well as other important court documents such as the Motion.

The Motion and attachments contain Settlement Class Counsel's considered opinion that the $24,000,000 Settlement Fund represents approximately fifty-seven percent (57%) of $42,295,560.69, which, according to an analysis of BancorpSouth's data by Class Counsel's expert, represents the maximum damages that Plaintiff and the Settlement Class could recover at trial.  Joint Decl. ¶¶ 50-63, 68.  The undersigned

finds that the disclosure of this percentage was sufficient to put Settlement Class Members on notice of their potential recovery based on their personal history with BancorpSouth and to allow them to make an informed decision about whether to accept the Settlement, object to the Settlement, or exclude themselves from the Settlement.

Based on the foregoing, the undersigned finds that the Settlement Class Members were provided with the best practicable notice; the notice was "reasonably calculated, under [the] circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Shutts*, 472 U.S. at 812 (quoting *Mullane*, 339 U.S. at 314-15).  This Settlement with BancorpSouth was widely publicized, and any Settlement Class Member who wished to express comments or objections had ample opportunity and means to do so.  Azari Decl. ¶¶ 8-10, 30-39.

## 2. The Settlement Is Fair, Adequate and Reasonable, And Final Approval Is Warranted Under Rule 23.

In determining whether to approve the Settlement, the Court considers whether it is "fair, adequate, reasonable, and not the product of collusion."  *Leverso v. SouthTrust Bank of Al., N.A.,* 18 F.3d 1527, 1530 (11th Cir. 1994); *see also Bennett,* 737 F.2d at 986.  A settlement is fair, reasonable and adequate when "the interests of the class as a whole are

better served if the litigation is resolved by the settlement rather than

pursued." *In re Lorazepam & Clorazepate Antitrust Litig.*, MDL No. 1290,

2003 WL 22037741, at *2 (D.D.C. June 16, 2003) (quoting *Manual for*

*Complex Litigation* (Third) § 30.42 (1995)).  The Court is "not called upon to

determine whether the settlement reached by the parties is the best

possible deal, nor whether class members will receive as much from a

settlement as they might have recovered from victory at trial." *In re Mexico*

*Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1014 (N.D. Ill. 2000) (citations

omitted).

The Eleventh Circuit has identified six factors to be considered in

analyzing the fairness, reasonableness and adequacy of a class action

settlement under Rule 23(e):

(1) the existence of fraud or collusion behind the settlement;

(2) the complexity, expense, and likely duration of the litigation;

(3) the stage of the proceedings and the amount of discovery

completed;

(4) the probability of the plaintiffs' success on the merits;

(5) the range of possible recovery; and

(6) the opinions of the class counsel, class representatives, and the

substance and amount of opposition to the settlement.

*Leverso*, 18 F.3d at 1530 n.6; *Bennett,* 737 F.2d at 986.

### a. There Was No Fraud or Collusion.

The undersigned readily finds that there was no fraud or collusion

behind this Settlement.  *See, e.g., Saccoccio v. JPMorgan Chase Bank,*

*N.A.*, 297 F.R.D. 683, 692 (S.D. Fla. 2014) (citing *Ass'n for Disabled Ams.,*

*Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 470 (S.D. Fla. 2002); *In re Sunbeam*

*Sec. Litig.,* 176 F. Supp. 2d 1323, 1329 n.3 (S.D. Fla. 2001); *Ingram v.*

*Coca-Cola Co.*, 200 F.R.D. 685, 693 (N.D. Ga. 2001) (court had "no doubt

that this case has been adversarial, featuring a high level of contention

between the parties"); *In re Motorsports Merchandise Antitrust Litig.,* 112 F.

Supp. 2d 1329, 1338 (N.D. Ga. 2000) ("This was not a quick settlement,

and there is no suggestion of collusion."); *Warren v. City of Tampa*, 693 F.

Supp. 1051, 1055 (M.D. Fla. 1988) (record showed no evidence of

collusion, but to the contrary showed "that the parties conducted discovery

and negotiated the terms of settlement for an extended period of time"),

*aff'd,* 893 F.2d 347 (11th Cir. 1989).

The record demonstrates that the Settlement was negotiated at arm's

length, and there is no suggestion of fraud or collusion.  The Parties

vigorously litigated the Action for approximately five years.  The first

mediation conference, held in 2012 shortly after the MDL 2036 Court

granted class certification, ended in an impasse.  Following that impasse,

the Parties resumed active litigation for several more years.  In August

2015, this Court ordered the Parties to mediate again prior to setting a firm

trial date.  The second mediation conference, overseen by an experienced

mediator, did not produce immediate results.  Instead, the mediator's

shuttle diplomacy continued for two months until the Parties reached an

agreement in principle to resolve the Action.  The mediator's protracted

involvement in the settlement negotiation process weighs heavily in favor of

approval.  *See, e.g., In re WorldCom, Inc. ERISA Litig.*, No. 02 Civ. 4816,

2004 WL 2338151, at *6 (S.D.N.Y. Oct. 18, 2004) (fact that '[a] respected

and dedicated judicial officer presided over the lengthy discussions from

which this settlement emerged" belied any suggestion of collusion).

> **b.    The Settlement Will Avert Additional Years of Highly Complex Litigation.**

This case involves approximately 190,000 Settlement Class

Members.  Azari Decl. ¶¶ 14-17 [DE # 94-4]; Declaration of Arthur Olsen ¶

36 ("Olsen Decl.") [N.D. Fla. DE # 94-5].  The claims and defenses are

complex.  Joint Decl. ¶¶ 58-64; Declaration of Professor Brian T. Fitzpatrick

¶ 18 ("Fitzpatrick Decl.") [ECF No. 94-3].  Litigating them has been difficult

and time consuming.  *Id.*  Although this litigation has been pending for over

five years, recovery by any means other than settlement would require

additional years of litigation in this Court and appellate courts.  *See United States v. Glens Falls Newspapers, Inc.*, 160 F.3d 853, 856 (2d Cir. 1998) (noting that "a principal function of a trial judge is to foster an atmosphere of open discussion among the parties' attorneys and representatives so that litigation may be settled promptly and fairly so as to avoid the uncertainty, expense and delay inherent in a trial."); *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297 at 317, 325-26 & n.32 (N.D. Ga. 1993) ("adjudication of the claims of two million claimants could last half a millennium").

The undersigned finds that the Settlement provides immediate and substantial benefits to approximately 190,000 Settlement Class Members, all of whom are current or former BancorpSouth customers.  Joint Decl. ¶¶ 63-64; *see In re Shell Oil Refinery*, 155 F.R.D. 552, 560 (E.D. La. 1993) ("The Court should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation.") (quoting *Oppenlander v. Standard Oil Co.*, 64 F.R.D. 597, 624 (D. Colo. 1974)); *see also In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) (noting that complex litigation "can occupy a court's docket for years on end, depleting the resources of the parties and taxpayers while

rendering meaningful relief increasingly elusive"); *In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mex., on April 20, 2010*, 910 F. Supp. 2d 891, 932 (E.D. La. 2012) *aff'd* 2014 WL 103836 (5th Cir. 2014) ("Even assuming litigation could obtain the results that this Settlement provides, years of litigation would stand between the class and any such recovery.  Hence, this  . . . factor weighs strongly in favor of granting final approval to the Settlement Agreement.").  Particularly because the "demand for time on the existing judicial system must be evaluated in determining the reasonableness of the settlement," *Ressler v. Jacobson*, 822 F. Supp. 1551, 1554 (M.D. Fla. 1992) (citation omitted), there can be no reasonable doubt as to the adequacy of this Settlement.

The undersigned finds that the amount of the recovery is extremely reasonable in light of the risks faced by Plaintiff and the certified class. Joint Decl. ¶¶ 58-67; Fitzpatrick Decl. ¶¶ 13-15.  The Settlement Fund of $24,000,000 represents approximately fifty-seven percent (57%) of the maximum possible damages that Settlement Class Counsel believe could have been recovered if the Action were successful in all respects.  Joint Decl. ¶ 68.  The undersigned finds that recovery of approximately fifty-seven percent (57%) of the maximum possible damages Plaintiff and the certified class may have recovered at trial constitutes an extremely fair

settlement.  The combined risks here were real – and potentially

catastrophic for the Settlement Class.  Fitzpatrick Decl. ¶¶ 13-15.

> **c.    The Factual Record is Sufficiently Developed to Enable Settlement Class Counsel to Make a Reasoned Judgment Concerning the Settlement.**

The Court considers "the degree of case development that class

counsel have accomplished prior to settlement" to ensure that "counsel had

an adequate appreciation of the merits of the case before negotiating." *In re*

*General Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig.,* 55 F.3d

768, 813 (3d Cir. 1995).  At the same time, "[t]he law is clear that early

settlements are to be encouraged, and accordingly, only some reasonable

amount of discovery should be required to make these determinations."

*Ressler*, 822 F. Supp. at 1555.

Following the completion of discovery and the Court's rulings on

pretrial motions, Settlement Class Counsel negotiated the Settlement with

the benefit of significant litigation before the MDL 2036 Court, the Eleventh

Circuit and, ultimately, this Court, including a complete damage analysis by

Class Counsel's expert based on customer data produced by

BancorpSouth.  Joint Decl. ¶¶ 65, 68; Olsen Decl. ¶¶ 21-33.  The

undersigned finds that Settlement Class Counsel's analysis and

understanding of the remaining legal obstacles, as well as the damage

analysis, positioned them to evaluate with confidence the strengths and weaknesses of Plaintiff's and the certified class' claims and BancorpSouth's defenses through the conclusion of the litigation, as well as the range and amount of damages that were potentially recoverable if the Action successfully proceeded to judgment on a class-wide basis.  Joint Decl. ¶ 65; Fitzpatrick Decl. ¶¶ 12-14.  "Information obtained from other cases may be used to assist in evaluating the merits of a proposed settlement of a different case."  *Lipuma*, 406 F. Supp. 2d at 1325.

### d.    Plaintiff and the Certified Class Still Faced Significant Obstacles to Obtaining Relief.

The Court also considers "the likelihood and extent of any recovery from the defendants absent . . . settlement."  *In re Domestic Air Transp.*, 148 F.R.D. at 314; *see also Ressler*, 822 F. Supp. at 1555 ("A Court is to consider the likelihood of the plaintiff's success on the merits of his claims against the amount and form of relief offered in the settlement before judging the fairness of the compromise.").  According to Professor Fitzpatrick: "[I]t was not at all clear that the class here would have won its case on the merits."  Fitzpatrick Decl. ¶ 13.  BancorpSouth's defenses that the relevant Account agreements expressly authorized it to engage in High-to-Low Posting, that there was nothing wrong with the High-to-Low Posting process it used and that it complied, at all times, with applicable laws and

28

regulations and the terms of the Account agreements with its customers presented serious legal issues that made ultimate success far from certain. *Id.* at ¶¶ 13-14.

In negotiating the Settlement, Settlement Class Counsel were mindful that BancorpSouth advanced significant defenses that would have been required to overcome at trial and on appeal.  Joint Decl. ¶¶ 66-67; Fitzpatrick Decl. ¶¶ 13-14.  This Action involved several major litigation risks.  *Id.*  As the MDL 2036 Court recognized in granting final approval to the settlement of overdraft claims against Bank of America: "The combined risks here were real and potentially catastrophic . . .  [B]ut for the Settlement, Plaintiffs and the class faced a multitude of potentially serious, substantive defenses, any one of which could have precluded or drastically reduced the prospects of recovery."  *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1347-48 (S.D. Fla. 2011).

Apart from the risks, the undersigned finds that continued litigation would have involved further delay and expense, which further counsels in favor of Final Approval.  Joint Decl. ¶¶ 59, 67; Fitzpatrick Decl. ¶ 15.  The uncertainties and delays from this process would have been significant.  *Id.*

Given the myriad risks attendant to these claims, as well as the certainty of further delay and expense from continued litigation, the

undersigned finds that the Settlement cannot be viewed as anything except

an extremely fair compromise.  *See, e.g.*, *Haynes v. Shoney's*, No. 89-

30093-RV, 1993 U.S. Dist. LEXIS 749, at *16-17 (N.D. Fla. Jan. 25, 1993)

("The risks for all parties should this case go to trial would be substantial.

…. It is possible that trial on the merits would result in … no relief for the

class members. … Based on … the factual and legal obstacles facing both

sides should this matter continue to trial, I am convinced that the settlement

… is a fair and reasonable compromise."); *Bennett v. Behring Corp.*, 96

F.R.D. 343, 349-50 (S.D. Fla. 1982), *aff'd*, 737 F.2d 982 (11th Cir. 1984)

(plaintiffs faced a "myriad of factual and legal problems" creating "great

uncertainty as to the fact and amount of damage," making it "unwise [for

plaintiffs] to risk the substantial benefits which the settlement confers . . . to

the vagaries of a trial").

> ### e.   The Benefits Provided by the Settlement Are Fair, Adequate and Reasonable When Compared to the Range of Possible Recovery.

In determining whether a settlement is fair given the potential range

of recovery, the Court should be guided by "the fact that a proposed

settlement amounts to only a fraction of the potential recovery does not

mean the settlement is unfair or inadequate."  *Behrens v. Wometco Enters.,*

*Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir.

1990).  Indeed, "[a] settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery."  *Id*.  "[T]he court must remember that "compromise is the essence of settlement.  A just result is often no more than an arbitrary point between competing notions of reasonableness."  *Raines v. Florida*, 987 F. Supp. 1416, 1418 (N.D. Fla. 1997) (citing *Bennett*, 737 F.2d at 986) (internal annotations omitted).  This is because fairness of a settlement must be evaluated in light of "the likelihood of success on the merits, the complexity, expense, and duration of litigation, the judgment and experience of trial counsel, and objections raised to the settlement."  *Id.* Courts regularly find settlements to be fair and adequate based, in part, on the risks and delays associated with further litigation.  *See, e.g., Torres v. Bank of Am. (In re Checking Account Overdraft Litig.)*, 830 F. Supp. 2d 1330, 1346 (S.D. Fla. 2011) (recovery of between 9% and 45% was "exemplary result"); *Great Neck Capital Appreciation Investment P'ship, L.P. v. PriceWaterHouseCoopers, L.L.P.*, 212 F.R.D. 400, 409-10 (E.D. Wis. 2002) ("The mere possibility that the class might receive more if the case were fully litigated is not a good reason for disapproving the settlement.").

The undersigned finds that Settlement Class Counsel were well-positioned to evaluate the strengths and weaknesses of Plaintiff's and the certified class's claims, as well as the appropriate basis upon which to settle them, as a result of their litigation and settlement of similar claims reached within and outside of MDL 2036.  Joint Decl. ¶¶ 54-56.  Settlement Class Counsel also gained further insight into the practical and legal issues they would have continued to face litigating these claims against BancorpSouth based, in part, on similar claims challenging Wells Fargo's high-to-low posting practices prosecuted in *Gutierrez v. Wells Fargo Bank, N.A.*, 730 F. Supp. 2d 1080 (N.D. Cal. 2010).  Joint Decl. ¶ 57.  Following a non-jury trial in *Gutierrez*, the United States Court of Appeals for the Ninth Circuit affirmed in part and reversed in part the judgment rendered in favor of the certified class of California customers in that case, vacated the $203 million restitution award, and remanded the case for further proceedings.  *Gutierrez v Wells Fargo Bank, N.A.*, 704 F.3d 712 (9th Cir. 2012).  On remand, the district court reinstated the judgment in favor of the class based on provisions of the California consumer fraud statute – a claim not available here since BancorpSouth did not operate branches in California.  *Gutierrez v. Wells Fargo Bank*, 944 F. Supp. 2d 819 (N.D. Cal. 2013).  In 2014, in an unpublished opinion, the Ninth Circuit affirmed the reinstated

judgment.  *Gutierrez v. Wells Fargo Bank*, 589 Fed. Appx. 824 (9th Cir.

Cal. 2014).  The United States Supreme Court recently denied review.

*Wells Fargo Bank, N.A. v. Gutierrez*, 136 S. Ct. 1512 (2016).

Class Counsel's damage expert's analysis of BancorpSouth's

available transactional data showed that the maximum amount of damages

that Plaintiff and the certified class could reasonably have anticipated

recovering at trial was $42,295,560.69 under the litigation class periods for

the eight (8) states where BancorpSouth operated branches during the

applicable class periods.  Olsen Decl. ¶ 33.  Through this Settlement,

Plaintiff and the Settlement Class Members achieved a recovery of

approximately fifty-seven percent (57%) of the maximum possible

damages, without further risks or delays. Joint Decl. ¶¶ 50-63, 68.   When

one considers the up to $500,000 in Notice Administration and Settlement

Administration costs that BancorpSouth is required to pay pursuant to the

Settlement, the actual recovery is fifty-eight percent (58%) of the maximum

possible damages.  Joint Decl. ¶¶ 62, 68; Fitzpatrick Decl. ¶ 12.

The undersigned finds that this Settlement provides an extremely fair

and reasonable recovery to the Settlement Class in light of BancorpSouth's

defenses, as well as the challenging, unpredictable path of litigation that

Plaintiff and the certified class would otherwise have continued to face in

this Court and appellate courts.  Joint Decl. ¶ 63; Fitzpatrick Decl. ¶¶ 13-14.

The Automatic Distribution process further supports Final Approval.  Joint

Decl. ¶ 70.  Eligible Settlement Class Members will receive their cash

benefits automatically, without needing to fill out any claim forms or take

any affirmative steps whatsoever.  *Id.*; Fitzpatrick Decl. ¶ 17.

The undersigned further finds that the $24,000,000 cash recovery is

fair and reasonable given the obstacles confronted and the complexity of

the Action, and the significant barriers that stood between the pre-

settlement status of the Action and final judgment, including rulings at trial

and in an inevitable post-judgment plenary appeal.  Joint Decl. ¶¶ 63, 69;

Fitzpatrick Decl. ¶¶ 12-14.  Taking these risks into account, the Settlement

"is not only fair, adequate and reasonable, but, frankly very impressive as

well."  Fitzpatrick Decl. ¶ 19.  BancorpSouth's agreement to pay up to

$500,000 of the fees, costs and expenses of the Notice Administrator and

Settlement Administrator further enhances the recovery.  Joint Decl. ¶ 68;

Fitzpatrick Decl. ¶ 8.  Given the extraordinary obstacles that Plaintiff and

the certified class still confronted in the litigation, the undersigned finds that

this recovery is an excellent achievement by any objective measure, and

provides Settlement Class Members with far more than a small fraction of

what they might recover if successful at trial and following appeal.

f.     **The Opinions of Settlement Class Counsel, Class Representative, and Absent Settlement Class Members Strongly Favor Approval of the Settlement.**

The Court gives "great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation." *Warren,* 693 F. Supp. at 1060; *see also Mashburn*, 684 F. Supp. at 669 ("If plaintiffs' counsel did not believe these factors all pointed substantially in favor of this settlement as presently structured, this Court is certain that they would not have signed their names to the settlement agreement."); *In re Domestic Air Transp.*, 148 F.R.D. at 312-13 ("In determining whether to approve a proposed settlement, the Court is entitled to rely upon the judgment of the parties' experienced counsel. The trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." (internal annotations omitted)).

Settlement Class Counsel have expressed the view that this Settlement is deserving of Final Approval, and the undersigned agrees. Joint Decl. ¶¶ 71-74.  Furthermore, the undersigned finds it notworthy that, of the more than 190,000 Settlement Class Members, only 19 requests for exclusion from the Settlement were timely submitted, and no objections were timely filed.  *Lipuma v. American Express Co.*, 406 F. Supp. 2d 1298, 1324 (S.D. Fla. 2005) (finding that a low percentage of objections "points to

35

the reasonableness of a proposed settlement and supports its approval").

### 3.   The Settlement Class.

The MDL 2036 Court previously found the requirements of Rule 23(a) and 23(b)(3) satisfied in this Action [S.D. Fla. ECF Nos. 2673, 3540], and in a number of similar actions in MDL 2036 on contested motions for class certification [*see*, *e.g.*, S.D. Fla. ECF No.1763 (Union Bank); S.D. Fla. ECF No. 2615 (TD Bank); S.D. Fla. ECF No. 2697 (PNC Bank); and S.D. Fla. ECF No. 2847 (Capital One)]; and in the context of settlement [*see*, *e.g.*, S.D. Fla. ECF Nos. 1520, 2150 (Bank of America); S.D. Fla. ECF Nos. 2712, 3134 (JPMorgan Chase Bank); S.D. Fla. ECF Nos. 2959, 3331 (Citizens Financial); and S.D. Fla. ECF No. 3559 (U.S. Bank)].  With respect to the Settlement Class, the undersigned agrees with the MDL 2036 Court's findings that: (a) the class members are so numerous that joinder of them is impracticable; (b) there are questions of law and fact common to the class that predominate over any individual questions; (c) the claims of the representative Plaintiff are typical of the claims of the class; (d) the representative Plaintiff and Class Counsel fairly and adequately represent and protect the interests of class members; and (e) a class action is superior to other available methods for the fair and efficient adjudication of the present controversy.

The 257 individuals listed on Exhibit A attached to the Final Judgment to be entered in the Action timely and otherwise properly excluded themselves from the certified class and the Settlement Class.[6]  The undersigned therefore finds that they are not part of the Settlement Class, are not bound by the terms of the Settlement generally or the release contained therein specifically, and will not receive any distribution from the Settlement Fund.

### 4.   The Application for Service Award to the Class Representative Is Approved.

Service awards "'compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation.'"  *Torres v. Bank of Am. (In re Checking Account Overdraft Litig.)*, 830 F. Supp. 2d 1330, 1357 (S.D. Fla. 2011) (citing *Allapattah Services, Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1218 (S.D. Fla. 2006)). "'[T]here is ample precedent for awarding incentive compensation to class representatives at the conclusion of a successful class action.'"  *Id.*  Courts have consistently found service awards to be an efficient and productive way to encourage members of a class to become class representatives.

---

[6] The 257 individuals identified on Exhibit A to the Final Judgment consist of (i) 19 individuals who timely excluded themselves from the Settlement Class, and (ii) 238 individuals who previously excluded themselves from the certified class [S.D. Fla. ECF No. 3589] and who, pursuant to the Settlement and Preliminary Approval Order, were not deemed part of the Settlement Class [Agreement ¶ 64; ECF No. 90].

*See*, *e.g.*, *Ingram*, 200 F.R.D. at 694 (awarding class representatives $300,000 each, explaining that "the magnitude of the relief the Class Representatives obtained on behalf of the class warrants a substantial incentive award."); *Spicer v. Chi. Bd. Options Exchange, Inc.*, 844 F. Supp. 1226, 1267-68 (N.D. Ill. 1993) (collecting cases approving service awards ranging from $5,000 to $100,000, and awarding $10,000 to each named plaintiff).  The factors for determining a service award include: (1) the actions the class representatives took to protect the interests of the class; (2) the degree to which the class benefited from those actions; and (3) the amount of time and effort the class representatives expended in pursuing the litigation. *See, e.g.*, *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998).

Based on the record, the undersigned finds that Plaintiff/class representative Shane Swift expended substantial time and effort in representing the Settlement Class, and deserves to be compensated for such time and effort.  Joint Decl. ¶ 78.  Therefore, the Court approves the requested Service Award of $10,000 for Plaintiff Shane Swift, to be paid from the Settlement Fund.

### 5.   Class Counsel's Application for Attorneys' Fees Is Granted.

Class Counsel request attorneys' fee equal to thirty-five percent

(35%) of the $24,000,000 Settlement Fund created through their efforts in litigating this case and reaching the Settlement.  In analyzing Class Counsel's fee request the Court must consider the factors utilized in *Camden I Condo. Ass'n. v. Dunkle*, 946 F.2d 768 (11th Cir. 1991).  As discussed below, after considering the *Camden I* factors, the undersigned finds and concludes that Class Counsel's application is well justified and, accordingly, the Court will award Class Counsel attorneys' fees equal to thirty-five percent (35%) of the $24,000,000 Settlement Fund.

### a.   The Law Awards Class Counsel Fees from the Common Fund Created Through Their Efforts.

It is well established that when a representative party recovers a common fund for the benefit of a class, counsel is entitled to attorneys' fees based upon the fund as a whole.  *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Camden I*, 946 F.2d at 774.  The common benefit doctrine stems from the premise that those who receive the benefit of a lawsuit without contributing to its costs are "unjustly enriched" at the expense of the successful litigant.  *Van Gemert*, 444 U.S. at 478.  As a result, the Supreme Court, the Eleventh Circuit, and courts in this Circuit have all recognized that "[a] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as whole."  *Sunbeam*, 176 F. Supp. 2d at 1333 (citing

*Van Gemert*, 444 U.S. at 478); *see also Camden I*, 946 F.2d at 771

("Attorneys in a class action in which a common fund is created are entitled

to compensation for their services from the common fund, but the amount

is subject to court approval.").

In the Eleventh Circuit, class counsel are awarded a percentage of

the total fund generated through a class action settlement.  *Waters v. Int'l*

*Precious Metals Corp.*, 190 F. 3d 1291, 1295-96 (11th Cir. 1999) (affirming

fee award of 33-1/3% of total amount made available to class, and

determining that fees may be determined based on total fund, not just

actual payout to class).  As the Eleventh Circuit held, "the percentage of the

fund approach [as opposed to the lodestar approach] is the better reasoned

in a common fund case. Henceforth in this circuit, attorneys' fees awarded

from a common fund shall be based upon a reasonable percentage of the

fund established for the benefit of the class."  *Camden I*, 946 F.2d at 774.

This Court has discretion in determining the appropriate fee

percentage awarded to counsel.  "There is no hard and fast rule mandating

a certain percentage of a common fund which may be awarded as a fee

because the amount of any fee must be determined upon the facts of each

case."  *In re Sunbeam,* 176 F. Supp. 2d at 1333 (quoting *Camden I*, 946

F.2d at 774).  For example, in *Waters,* the Eleventh Circuit affirmed a 33-

1/3% fee award where the District Court first determined that the benchmark should be 30% and then adjusted the fee award higher based on the circumstances of the case.   *Waters*, 190 F. 3d at 1295-96.

Based on the findings below, the undersigned finds and concludes that Class Counsel should be awarded attorneys' fees equal to thirty-five percent (35%) of the $24,000,000 Settlement Fund secured through their efforts.  The undersigned finds that Class Counsel undertook an incredibly risky and undesirable case and, through their diligence, perseverance, and skill, achieved an outstanding result for the settlement class.  Fitzpatrick Decl. ¶¶ 23-25; Declaration of John A. DeVault, III ("DeVault Decl.") ¶ 30 [N.D. Fla. DE # 94-6].  They are to be commended and should be compensated accordingly.  The undersigned is of the view that this kind of initiative and skill must be adequately compensated to insure that counsel of this caliber is willing to undertake these kinds of risky but important cases in the future.  *See Muehler v. Land O'Lakes, Inc.*, 617 F. Supp. 1370, 1375-76 (D. Minn. 1985).

### b.   As Applied Here, the *Camden I* Factors Demonstrate the Requested Fee Is Reasonable and Justified.

The Eleventh Circuit's factors for evaluating the reasonable percentage to award class-action counsel are:

(1) the time and labor required;

(2) the novelty and difficulty of the questions involved;

(3) the skill requisite to perform the legal service properly;

(4) the preclusion of other employment by the attorney due to acceptance of the case;

(5) the customary fee;

(6) whether the fee is fixed or contingent;

(7) time limitations imposed by the client or the circumstances;

(8) the amount involved and the results obtained;

(9) the experience, reputation, and ability of the attorneys;

(10) the "undesirability" of the case;

(11) the nature and the length of the professional relationship with the client; and

(12) awards in similar cases.

*Camden I*, 946 F.2d at 772 n.3 (citing factors originally set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)).

These twelve factors are guidelines; they are not exclusive.  "Other pertinent factors are the time required to reach a settlement, whether there are any substantial objections by class members or other parties to the settlement terms or the fees requested by counsel, any non-monetary benefits conferred upon the class by the settlement, and the economics involved in prosecuting a class action."  *Sunbeam*, 176 F. Supp. 2d at 1333

(quoting *Camden I*, 946 F.2d at 775).  In addition, the Eleventh Circuit has "encouraged the lower courts to consider additional factors unique to the particular case."  *Camden I*, 946 F.2d at 775.

### i. The Claims Against BancorpSouth Required Substantial Time and Labor.

In *Camden I*, the Eleventh Circuit made clear that percentage of the fund is the exclusive method for awarding fees in common fund class actions.[7]  *Camden I*, 946 F.2d at 774.  Even before *Camden I*, courts in this Circuit recognized that "a percentage of the gross recovery is the only sensible method of awarding fees in common fund cases."  *Mashburn*, 684 F. Supp. at 690.

In view of the prevailing law in this Circuit, the history of this litigation and the excellent results obtained through this Settlement, it is unnecessary to consider or discuss Class Counsel's lodestar.  In *Camden I*, the Eleventh Circuit criticized lodestar and the inefficiencies that it creates.  946 F.2d at 773-75.  In so doing, the Court concluded that "the percentage of the fund approach is the better reasoned [approach] in common fund cases" particularly because "in common fund cases in which

---

[7] Eleventh Circuit attorneys' fee law governs this request.  *See Allapattah*, 454 F. Supp. 2d at 1200 ("The district court presiding over a diversity-based class action pursuant to Fed. R. Civ. P. 23 has equitable power to apply federal common law in determining fee awards irrespective of state law.").

the measure of the recovery is the best determinant of the reasonableness and quality of the time expended."  *Id.* at 773-74; *see also* Alba Conte, *Attorney Fee Awards* § 2.7, at 91 fn. 41 ("The Eleventh . . . Circuit[] repudiated the use of the lodestar method in common-fund cases").  Under *Camden I*, courts in this Circuit regularly award fees based on a percentage of the recovery, without discussing lodestar at all.  *See, e.g.*, *Torres*, 830 F. Supp. 2d at 1358 ("when a representative party has conferred a substantial benefit upon a class, counsel is entitled to an allowance of attorneys' fees based upon the benefit obtained"); *Harris v. Associated Bank, N.A. (In re Checking Account Overdraft Litig.)*, No. 09-MD-02036-JLK, 2013 U.S. Dist. LEXIS 190560, at *35 (S.D. Fla. Aug. 2, 2013) (same); *Mosser v. TD Bank, N.A. (In re Checking Account Overdraft Litig.)*, No. 09-MD-02036-JLK, 2013 U.S. Dist. LEXIS 187627, at *92 (S.D. Fla. March 18, 2013) (same); *David v. American Suzuki Motor Corp.*, 2010 WL 1628362 (S.D. Fla. Apr. 15, 2010); *Stahl v. MasTec, Inc.*, 2008 WL 2267469 (M.D. Fla. May 20, 2008).  "[A] common fund is itself the measure of success and represents the benchmark on which a reasonable fee will be awarded. . . . In this context, the monetary results achieved predominate over all other criteria." *Camden I*, 946 F.2d at 774 (citations and alterations omitted).

Based on a review of the extensive record in this Action, as well as the declarations submitted in support of the Motion [ECF Nos. 94-2, 94-3, 94-6], the undersigned finds that prosecuting and settling these claims demanded considerable time and labor.  Joint Decl. ¶ 82; Fitzpatrick Decl. ¶ 26; DeVault Decl. ¶ 19.  Throughout the pendency of the Action, Class Counsel ensured that they were engaged in organized, coordinated, and productive work to maximize efficiency and minimize duplication of effort. Joint Decl. ¶ 82.  Class Counsel devoted substantial time to investigating the claims of potential plaintiffs against BancorpSouth.  *Id.* at ¶ 83.  Class Counsel interviewed numerous BancorpSouth customers and potential plaintiffs to gather information about BancorpSouth's conduct, at the time the lawsuit was filed and in the past, to determine the effect that its conduct had on consumers.  *Id.*  This information was essential to Class Counsel's ability to understand the nature of BancorpSouth's conduct, the language of the Account agreements at issue, and potential remedies.  *Id.*  Class Counsel also expended significant resources researching and developing the legal claims at issue.  *Id.* at ¶ 84.

Class Counsel expended significant resources researching and developing the legal theories and arguments presented in the pleadings and motions, and in opposition to BancorpSouth's motions, before the MDL

2036 Court, the Eleventh Circuit and, ultimately following remand, before this Court.  Joint Decl. ¶ 84.  Substantial time and resources were also dedicated to conducting discovery.  *Id.* at ¶ 85.  Class Counsel took approximately fourteen depositions of BancorpSouth's fact and expert witnesses, and devoted substantial time to reviewing over 100,000 pages of documents and voluminous electronic data produced by BancorpSouth.  *Id.*  Class Counsel also served and responded to written discovery.  *Id.*

Settlement negotiations consumed further time and resources.  Joint Decl. ¶ 86.  The initial mediation session held in 2012 required substantial preparation.  In October 2015, at this Court's direction, Settlement Class Counsel and BancorpSouth participated in a second mediation conference that also required substantial preparation.  Substantial time and effort was devoted to the continued settlement negotiations following the second mediation session that ultimately resulted in the Parties' agreement.  Finally, significant time was devoted to the drafting of the Agreement and the Settlement approval process.  All of this work consumed a substantial amount of time.  As Settlement Class Counsel also pointed out during the July 14, 2016 hearing, their work does not end upon the granting of Final Approval.  Additional work will be required of Settlement Class Counsel

over the next year in connection with the post-approval implementation of the Settlement.

The undersigned finds that Class Counsel's coordinated work ultimately paid dividends for the Settlement Class. Each of the above-described efforts was essential to achieving the Settlement before the Court. Joint Decl. ¶ 87. The time and resources Class Counsel devoted to prosecuting and settling this Action justify the fee that they now request. As Professor Fitzpatrick notes, this particular case was litigated longer than any other settlement reached to date in MDL 2036 (more than 6 years), well beyond the average time to resolve a consumer class action. Fitzpatrick Decl. ¶ 26. The Parties completed everything but the trial itself; all pretrial discovery and motion practice was completed. Id. "For all these reasons, … the 35% fee award requested here is well within the range of reason." *See* Fitzpatrick Decl. ¶ 32. This is the same conclusion expressed by John DeVault, a past President of The Florida Bar who is well known to this Court. *See* DeVault Decl. ¶ 19.

### ii. The Issues Involved Were Novel and Difficult and Required the Skill of Highly Talented Attorneys.

The undersigned finds that Class Counsel accomplished outstanding results for the Settlement Class in the face of substantial risks. Fitzpatrick

Decl. ¶ 23; *see Walco*, 975 F. Supp. at 1472 (explaining that "[g]iven the quality of defense counsel from prominent national law firms, the Court is not confident that attorneys of lesser aptitude could have achieved similar results"); *see also Camden I*, 946 F.2d at 772 n.3 (in assessing the quality of representation by class counsel, Court also should consider the quality of their opposing counsel.); *Johnson,* 488 F.2d at 718; *Ressler*, 149 F.R.D. at 654.

Class Counsel's skills and abilities played a direct result in the outcome achieved through this Settlement. "[P]rosecution and management of a complex national class action requires unique legal skills and abilities." *Edmonds v. U.S.*, 658 F. Supp. 1126, 1137 (D.S.C. 1987). "Without doubt, they had the skill needed to perform the services required in this complex class action . . . This talented team of lawyers accomplished outstanding results for the settlement class in the face of substantial risks. Had they not had the requisite skill to perform the necessary services, it is highly doubtful the class could have achieved the results obtained in this case. In short, these are not mere "benchmark" lawyers."" *See* Fitzpatrick Decl. ¶ 25. The fact that this level of legal talent was available to the Settlement Class is another compelling reason in support of the fee request. The Settlement Class received the benefit of

impressive legal services provided by Class Counsel throughout the litigation and, ultimately, in achieving the Settlement in this Action.  Under the facts of this Action, the undersigned finds that Class Counsel's efforts support approval of the requested fee.

### iii.    The Claims Against BancorpSouth Entailed Considerable Risk.

The undersigned finds that the Settlement is particularly noteworthy given the combined litigation risks.  Joint Decl. ¶¶ 93-94; Fitzpatrick Decl. ¶ 27; DeVault Decl. ¶ 20-21.  BancorpSouth raised substantial defenses. Success under these circumstances represents a genuine milestone.

"A court's consideration of this factor recognizes that counsel should be rewarded for taking on a case from which other law firms shrunk.  Such aversion could be due to any number of things, including social opprobrium surrounding the parties, thorny factual circumstances, or the possible financial outcome of a case. All of this and more is enveloped by the term 'undesirable.'" *In re Sunbeam*, 176 F. Supp. 2d at 1336.  In addition, "[t]he point at which plaintiffs settle with defendants . . . is simply not relevant to determining the risks incurred by their counsel in agreeing to represent them." *Skelton v. General Motor Corp.*, 860 F.2d 250, 258 (7th Cir. 1988), *cert. denied*, 493 U.S. 810 (1989). "Undesirability" and relevant risks must be evaluated from the standpoint of plaintiffs' counsel as of the time they

commenced the suit, not retroactively, with the benefit of hindsight. *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.,* 540 F.2d 102, 112 (3d Cir. 1976); *Walco*, 975 F. Supp. at 1473.

The undersigned finds that prosecuting the Action was risky from the outset.  Joint Decl. ¶ 93; Fitzpatrick Decl. ¶ 13.  "Although Judge King [of the MDL 2036 Court] rejected [BancorpSouth's state law] defenses as a matter of law, other courts have [accepted such defenses], and it is not at all clear how an appellate court would ultimately rule on these issues.  Moreover, it is not at all clear how a jury would have seen these defenses as a matter of fact had this case proceeded to trial."  *See* Fitzpatrick Decl. ¶ 13.  While the undersigned expresses no opinion on the ultimate merits of these arguments, the critical point for present purposes is that, heading into this case, Class Counsel confronted these issues without any assurances as to how the Court would rule.  Class Counsel nonetheless accepted the case and the risks that accompanied it.  Given the positive societal benefits to be gained from attorneys' willingness to undertake this kind of difficult and risky, yet important, work, such decisions must be properly incentivized.  Therefore, the undersigned finds and concludes that the proper incentive here is a thirty-five percent (35%) fee based on the $24,000,000 Settlement Fund.

### iv. Class Counsel Assumed Substantial Risk to Pursue the Action on a Pure Contingency Basis, and Were Precluded From Other Employment as a Result.

The undersigned finds that Class Counsel assumed a significant risk of nonpayment or underpayment in undertaking to prosecute this complex case entirely on a contingency fee basis.  Joint Decl. ¶ 95; Fitzpatrick Decl. ¶ 27; DeVault Decl. ¶ 24.  Numerous cases recognize such a risk as an important factor in determining a fee award.  "A contingency fee arrangement often justifies an increase in the award of attorney's fees." *In re Sunbeam*, 176 F. Supp. 2d at 1335 (quoting *Behrens*, 118 F.R.D. at 548, *aff'd*, 899 F.2d 21 (11th Cir. 1990)); *see also In re Continental Ill. Sec. Litig.*, 962 F.2d 566 (7th Cir. 1992) (holding that when a common fund case has been prosecuted on a contingent basis, plaintiffs' counsel must be compensated adequately for the risk of non-payment); *Ressler*, 149 F.R.D. at 656; *Walters v. Atlanta*, 652 F. Supp. 755, 759 (N.D. Ga. 1985), *modified*, 803 F.2d 1135 (11th Cir. 1986); *York v. Alabama State Bd. of Education*, 631 F. Supp. 78, 86 (M.D. Ala. 1986).

Public policy concerns – in particular, ensuring the continued availability of experienced and capable counsel to represent classes of injured plaintiffs holding small individual claims – support the requested fee here:

> Generally, the contingency retainment must be promoted to assure representation when a person could not otherwise afford the services of a lawyer. . . . A contingency fee arrangement often justifies an increase in the award of attorney's fees. This rule helps assure that the contingency fee arrangement endures. If this "bonus" methodology did not exist, very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks of recovering nothing.

*Behrens*, 118 F.R.D. at 548.

The risks undertaken by Class Counsel have already been discussed.  It is uncontroverted that the time spent by Class Counsel on the Action was time that could not be spent on other matters.  Joint Decl. ¶ 97. Consequently, this factor supports the requested fee.

### v.    Class Counsel Achieved an Excellent Result.

The undersigned finds that this Settlement represents an excellent result.  Fitzpatrick Decl. ¶ 27; DeVault Decl. ¶¶ 21, 26.  The common fund created by this Settlement is $24,000,000, representing approximately 57% of the maximum possible damages that *may* have been recovered at trial, *assuming* Plaintiff and the certified class were successful in establishing liability at trial, the jury awarded the full amount of damages based on Class Counsel's expert's methodology, and the judgment was ultimately affirmed on appeal.  Rather than facing more years of uncertain litigation, all Settlement Class Members will receive an immediate cash benefit.  Joint

Decl. ¶ 92.  The Settlement Fund will not be reduced by the substantial

fees and costs of Notice or Settlement administration; up to $500,000 of

such fees and expenses have been and will be borne by BancorpSouth.

*Id.*  Moreover, payments to Settlement Class Members will be forthcoming

automatically, through direct deposit for current Account Holders and

checks for former Account Holders.  *Id.*

### vi.   The Requested Fee Comports with Fees Awarded in Similar Cases.

The undersigned finds that the percentage fee sought here is within

the range of fees typically awarded in similar cases.  Joint Decl. ¶ 98;

Fitzpatrick Decl. ¶¶ 23-25; DeVault Decl. ¶ 23 ("[T]he request of thirty-five

percent (35%) being made by Class Counsel is within the range of

customary fees for similar work in our community.").  Numerous decisions

within and outside of the Eleventh Circuit have found that a 35% fee is

within the range of reasonableness under the *Camden I* factors.  Fitzpatrick

Decl. ¶ 23-25.  Similarly, numerous district courts have awarded attorneys'

fees in excess of thirty percent.  *See Allapattah Servs., Inc. v. Exxon Corp.*,

454 F. Supp. 2d 1185, 1210 (S.D. Fla. 2006) (emphasis added) (awarding

fees equaling 31⅓% of mega fund); *In re Lease Oil Antitrust Litig.*, 186

F.R.D. 403 (S.D. Tex. 1999) (35.1%)); *see also Gaskill v. Gordon*, 942 F.

Supp. 382, 387-88 (N.D. Ill. 1996), *aff'd*, 160 F.3d 361 (7th Cir. 1998)

(finding that 33% is the norm, and awarding 38% of settlement fund); *In re Combustion, Inc.*, 968 F. Supp. 1116 (W.D. La. 1997) (36%); *In re Crazy Eddie Sec. Litig.*, 824 F. Supp. 320, 326 (E.D.N.Y. 1993) (33.8 %); *In re Ampicillin Antitrust Litig.*, 526 F. Supp. 494, 498 (D.D.C. 1981) (45%); *Beech Cinema, Inc. v. Twentieth-Century Fox Film Corp.*, 480 F. Supp. 1195, 1199 (S.D.N.Y. 1979), *aff'd*, 622 F.2d 1106 (2d Cir. 1980) (approximately 53%); *Zinman v. Avemco Corp.*, 1978 WL 5686 (E.D. Pa. Jan. 18, 1978) (Higginbotham, J.) (50%).

The undersigned finds that a fee equal to thirty-five percent (35%) of the $24,000,000 Settlement Fund is appropriate here and comports with fee awards in similar cases. Fitzpatrick Decl. ¶¶ 23-25; DeVault Decl. ¶ 23. Professor Fitzpatrick distilled several major empirical studies of attorneys' fees, including his own, awarded in connection with class action settlements. Fitzpatrick Decl. ¶ 23. He concluded that the empirical data from those studies supports the reasonableness of a 35% fee award in this case. Fitzpatrick Decl. ¶¶ 23-25; *see also* Devault Decl. ¶ 23.

Class Counsel's fee request also falls within the range of awards in other cases within this Circuit, including settlements of related cases approved by the MDL 2036 Court. Fitzpatrick Decl. ¶¶ 23-25; DeVault Decl. ¶¶ 9, 23, 29 ("Based on my experience as a long-time practitioner in

54

Florida, I believe Class Counsel's fee request of thirty-five percent (35%) of the twenty-four million dollar ($24,000,000) common fund in this case is consistent with other fee awards in MDL No. 2036 and in other cases in Florida."); *see also, e.g.*, *Waters*, 190 F.3d 1291 (11th Cir. 1999) (affirming fee award of 33⅓% on settlement of $40 million even though most of the fund ultimately reverted to the defendant); *Gutter v. E.I. Dupont De Nemours & Co.*, 95-2152-CIV-Gold (S.D. Fla. May 30, 2003) (33⅓% of $77.5 million settlement); *Sands Point Partners, LP v. Pediatrix Med. Group, Inc.*, 2002 U.S. Dist. LEXIS 25721 (S.D. Fla. 2002) (30% of $12 million settlement); *In re CHS Elecs., Inc. Sec. Litig.*, 99-8186-CIV-Gold (S.D. Fla. 2002) (30% on settlement of over $11 million); *Ehrenreich v. Sensormatic Elecs. Corp.*, 95-6637-CIV-Zloch (S.D. Fla. 1998) (30% on settlement of over $44 million); *Tapken v. Brown*, 90-0691-CIV-Marcus (S.D. Fla. 1995) (33% of $10 million settlement).[8]

---

[8] *See also In re Friedman's, Inc. Sec. Litig.*, 2009 WL 1456698 (N.D. Ga. May 22, 2009) (30%); *Francisco v. Numismatic Guar. Corp. of Am.*, 2008 WL 649124 (S.D. Fla. 2008) (30%); *Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334 (S.D. Fla. 2007) (30%); *In re BellSouth Corp. Sec. Litig.*, Civil Action No. 1:02-cv-2142-WSD (N.D. Ga. Apr. 9, 2007) (30%); *In re Cryolife, Inc. Sec. Litig.*, Civil Action No. 1:02-cv-1868-BBM (N.D. Ga. Nov. 9, 2005) (30%); *In re Profit Recovery Group Int'l, Inc. Sec. Litig.*, Civil Action No. 1:00-cv-1416-CC (N.D. Ga. May 26, 2005) (33⅓% plus interest and expenses); *In re Clarus Corp. Sec. Litig.*, Civil Action No. 1:00-CV-2841-CAP (N.D. Ga. Jan. 6, 2005) (33⅓%); *In re Pediatric Servs. of Am., Inc. Sec. Litig.*, Civil Action No. 1:99-CV-0670-RLV (N.D. Ga. Mar. 15, 2002) (33⅓%); *Ressler v. Jacobson*, 149 F.R.D. 651 (M.D. Fla. 1992) (30%).

Based on the foregoing, the undersigned finds that the risks of this litigation, considered against the excellent result, support and justify a thirty-five percent (35%) fee.

### vii.   The Remaining *Camden I* Factors Also Favor Approval of Class Counsel's Fee Request.

The undersigned finds that the remaining *Camden I* factors further support Class Counsel's fee request.  Fitzpatrick Decl. ¶ 28; DeVault Decl. ¶ 21.  The burdens of this litigation and the relatively size of most of the firms representing Plaintiff and the certified class lend support to the fee awarded.  This fee is firmly rooted in "the economics involved in prosecuting a class action."  *In re Sunbeam*, 176 F. Supp. 2d at 1333.  The undersigned is convinced that proper incentives must be maintained to insure that attorneys of this caliber are available to take on cases of significant public importance like this one.  The factual record in this case further supports Class Counsel's requested fee.

### 6.   Class Counsel's Application for Reimbursement of Litigation Costs and Expenses Is Approved.

Finally, the undersigned finds that Class Counsel's request for reimbursement of $338,605.49, representing certain out-of-pocket costs and expenses Class Counsel incurred during the prosecution and settlement of the Action against BancorpSouth is reasonable and justified.

Joint Decl. ¶ 100.  These costs and expenses consist of: (1) $289,320.22 in

fees and expenses incurred for three experts, including Arthur Olsen,

whose services were critical in identifying members of the certified class

and in determining their damages, and in reconfirming the identification of

Settlement Class Members and the amount of their damages for purposes

of the Settlement; (2) $30,361.17 in court reporter fees and transcripts

associated with depositions and hearings in the Action; and (3) $18,924.10

in mediators' fees and expenses incurred for the services rendered by the

two mediators, Professor Eric Green and Mr. Jonathan Marks.  *Id.*  These

costs and expenses, advanced by Class Counsel for the benefit of the

Settlement Class, were necessarily incurred in furtherance of the litigation

of the Action and the Settlement.  Joint Decl. ¶ 100; *see Mills v. Electric

Auto-Lite Co.*, 396 U.S. 375, 391-92 (1970).  Therefore, the Court approves

Class Counsel's request for reimbursement of costs and expenses in the

amount of $338,605.49, which shall be made from the Settlement Fund

following disbursement of attorneys' fees.

**CONCLUSION**

For the foregoing reasons, the Court: (1) grants Final Approval to the Settlement; (2) appoints Plaintiff Shane Swift as Class Representative for this Settlement; (3) appoints as Class Counsel and Settlement Class Counsel the law firms and attorneys listed in paragraphs 31 and 59 of the Agreement, respectively; (4) awards a Service Award to Plaintiff Shane Swift in the amount of $10,000; (5) awards Class Counsel attorneys' fees equal to thirty-five percent (35%) of the $24,000,000 Settlement Fund, plus reimbursement of litigation costs and expenses in the amount of $338,605.49; (6) directs Settlement Class Counsel, Plaintiff, and BancorpSouth to implement and consummate the Settlement pursuant to its terms and conditions; (7) retains continuing jurisdiction over Plaintiff, the Settlement Class, and BancorpSouth to implement, administer, consummate and enforce the Settlement and this Final Approval Order; (8) bars and enjoins all Releasing Parties from asserting any of the Released Claims and bars and enjoins all Releasing Parties from pursuing any Released Claims against BancorpSouth (as provided in paragraphs 30 and 105 of the Agreement) at any time, including during any appeal from the Final Approval Order, and retains jurisdiction over the enforcement of these injunctions; and (9) will separately enter Final Judgment dismissing the

Action with prejudice.

      **DONE AND ORDERED** at Gainesville, Florida, this 15th day of July,

2016.

*/Gary R. Jones*

GARY R. JONES
United States Magistrate Judge